OPINION OF THE COURT
David B. Saxe, J.
Petitioner brings this CPLR article 78 proceeding to annul respondent’s determination of March 6, 1986 which found that petitioner had violated a Taxi and Limousine Commission’s (TLC) rule and regulation concerning the operation of a taxicab without a trip record. Petitioner was fined $25 for that violation.
On May 17, 1985 an employee of the petitioner was issued summons No. T185055 for violation of rule No. 408 (a) — dispatching a driver without a trip card.
A trip record is a daily chronological listing of every pick up made by a driver throughout the shift from destination to destination. It indicates when the driver took a rest or stopped for lunch and basically summarizes the driver’s activities for the time that he was supposed to be working. The trip record *1036 also lists the taxicab’s medallion number, the taxicab’s driver’s license number, the license plate number and the taximeter reading at the start and finish of each shift. (TLC Rules and Regulations rule 401, covering taxicab drivers.)
At the hearing on May 17, 1985, the Administrative Law Judge determined that petitioner was guilty and imposed a fine of $25. The decision was affirmed and petitioner then commenced this proceeding.
The claim of the petitioner is that the TLC inspector acted irrationally and violated petitioner’s constitutional rights by making a random spot search of petitioner’s taxicab. It is conceded that there was no trip record in the vehicle. However, petitioner challenges the right of the TLC inspector to randomly search a taxicab and that without specific regulations as to time, scope, and manner, the search is per se unconstitutional. Therefore, petitioner contends that there was no legal justification for the inspector to have stopped and searched the cab initially.
The city acknowledges that there is no specific rule regarding the manner of conducting routine inspections. But there are rules promulgated by the TLC, pursuant to which the taxicab owner is fully aware of the obligation to have the trip record available if an enforcement officer requests that it be produced (Taxicab Owner’s Responsibility to Commission § 200 et seq.X In general, the procedures permit inspectors at random to briefly stop taxicabs and conduct inspections of the driver’s and vehicle’s credentials. Respondent claims that these types of administrative searches are proper and not contrary to any constitutional Fourth Amendment prohibition against unreasonable search and seizure.
It is well established that the Fourth Amendment prohibition against unreasonable searches and seizures applies to private commercial property as well as to private residential property (See v City of Seattle, 387 US 541 [1967]). However, unlike searches of private homes, the law has recognized broader latitude when the property searched is commercial and subject to the jurisdiction of a regulatory agency. (See, Donovan v Dewey, 452 US 594 [1981].) Even petitioner concedes that warrantless inspections of taxicabs may be valid. But he contends, that without the authority of a valid statutory scheme that is limited in time, place, and scope, the random search is impermissible. The absence of specific regulations, the petitioner claims, makes this search violative of its *1037 constitutional rights and any resulting summons is therefore invalid.
In the case principally relied upon by petitioner it was noted that: "[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential” (United States v Biswell, 406 US 311, 316 [1972]). This is especially so as applied to the taxicab business which is a highly regulated industry. Petitioner engages in this business with the knowledge that it will be subject to government inspections (United States v Biswell, supra; Marshall v Barlow’s, Inc., 430 US 964, 436 US 307 [1978]). No persuasive argument or case authority is put forth by petitioner to demonstrate that there must be rules limiting these types of searches. Considering the need for the TLC to ensure that taxicabs comply with certain procedures there does not appear to be any constitutional prohibition against random searches of this nature. Thus, random stops by TLC inspectors to check the driver’s vehicle credentials are constitutionally valid.
Accordingly, the application to declare unconstitutional the random searches of taxicabs for driver’s vehicle credentials and documents is denied. The petition is therefore dismissed.