OPINION OF THE COURT
B. Marc Mogil, J.
On January 26, 1988, defendant John Deacy was operating *233 a 1986 Mack tractor trailer with commercial license plates registered to the Shell Oil Company. The truck bore a diamond-shaped placard with the number "1203” upon it, indicating that the vehicle was qualified to carry and transport gasoline (a "hazardous material” pursuant to 49 USC ch 27 [§ 1801 et seq.] and section 14-f of the Transportation Law).
At about 11:40 a.m. on that date, Mr. Deacy was driving the vehicle in a westerly direction on Sunrise Highway, a major east-west thoroughfare in Merrick, when Nassau County Police Officer Rocco Mastroangelo, in a radio patrol car, directed that he pull the truck off the road for an inspection.
After a thorough inspection, defendant was issued two uniform traffic tickets: one for a violation of Vehicle and Traffic Law § 375 (35) (one tire below required tread measurement); the second based on a violation of section 14-f of the Transportation Law ("Transportation of hazardous materials”) (split and exposed air brake line).
Defendant moved, inter alia, for dismissal on the ground that the stop of the vehicle was improper and unlawful and that the subsequent inspection illegal. Decision was reserved on defendant’s applications and the matter was tried before me on May 11, 1988.
The crucial factor in this case is an examination and determination of the predicate for and basis of Officer Mastroangelo’s stop of the vehicle. The police officer’s testimony in sum was that he pulled the truck over for a "routine check”. The officer did not testify as to any reason to believe or even suspect that any violation of the Vehicle and Traffic Law, either of a moving violation or equipment violation nature, had occurred. Nor was there an expressed basis for suspicion that there existed a violation of the Transportation Law, Penal Law or any other statute or regulation.
To wit, there appeared neither any articulable nor objective reason for singling out the truck defendant was operating, as opposed to any other vehicle on the road at that place and time. The only predicate relied upon by Officer Mastroangelo was the desire to conduct a completely discretionary "routine traffic stop” (albeit in a highly professional manner and with the best of apparent intentions).
There was no testimony or evidence proffered to the effect, for instance, that the Nassau County Police Department had at that point in time devised any neutral, nonarbitrary plan or program for the regular or systematic inspection of trucks *234 engaged in the transportation of such hazardous materials on the major roadways of Nassau County.
The language of subdivision (6) of Transportation Law § 14-f must be very carefully considered: "Any police officer having lawfully stopped any vehicle which he has reason to believe is transporting hazardous materials or hazardous waste may require that such vehicle shall be driven to a place designated by such police officer to be inspected pursuant to the provisions of this section” (emphasis supplied).
Regulations have been promulgated concerning the transportation of hazardous materials, appearing at 17 NYCRR part 507. The People place reliance on section 507.4 (c) thereof, which sets forth that "All carriers and persons engaged in the transportation of hazardous materials shall afford to authorized employees of the Department of Transportation, authorized employees of the Department of Environmental Conservation, police officers and the Division of State Police and the Federal Highway Administration reasonable opportunity to enter vehicles or any place where hazardous materials are offered into commerce for the purpose of inspection to determine compliance with the provisions of this Part.”
Referring back to Transportation Law § 14-f, the stopping of a vehicle must under our laws be "lawful”. The propriety of police interference or detention of a vehicle on a public roadway must be tested in view of the Fourth Amendment’s ban on unreasonable searches and seizures and must pass constitutional muster to be permissible.
Based on the testimony and other evidence adduced at trial, as well as applicable statutes and case law, inasmuch as the stop, detention and inspection of the subject vehicle were entirely random and discretionary and not based upon any reasonable suspicion of a violation, the two simplified traffic informations must be dismissed as a matter of law.
The arbitrary, random or wholly discretionary stopping of vehicles has been roundly condemned. In the seminal case of People v Ingle (36 NY2d 413) the Court of Appeals held that a single vehicle traveling on a public highway may be stopped for a "routine traffic check” only when a police officer reasonably suspects a violation of the Vehicle and Traffic Law. It is impermissible for an officer to arbitrarily choose a vehicle from the stream of traffic solely to inspect it for "possible” equipment violations.
The court there ruled that absent reasonable suspicion of a *235 vehicle violation, a "routine traffic check” to determine whether or not a vehicle is being operated in compliance with the Vehicle and Traffic Law is permissible only when conducted according to nonarbitrary, nondiscriminatory, uniform procedures for detecting violations.
The Ingle court allowed for a systematic, uniform procedure for routine traffic stops in order to verify compliance with the law, but forbade stops of a gratuitous character, stemming from a law enforcement officer’s individually discriminatory selection. The uniform inspection of all vehicles at a roadblock or some checkpoint is permitted, however. The decision also stated that, "It is assumed that any other kind of stopping without cause or reason or by arbitrary caprice or curiosity is an impermissible intrusion on the freedom of movement”. (Supra, at 416.)
The Court of Appeals additionally pointed out in Ingle (supra) that a stop of a vehicle for a "routine traffic check” is in fact a seizure within constitutional limitations. Further, the interest of the State in maintaining safety on the public highways must, it held, be balanced against the individual motorist’s right to be free from arbitrary State intrusion on freedom of movement in a motor vehicle. The Ingle court made clear that the proper balance of these competing interests lies in eliminating any possible arbitrary element of police intervention.
A stop is valid when based upon specific and articulable facts which taken together with rational inferences from those facts reasonably warrants the intrusion. However, the stopping of a vehicle, even one purported to be transporting some hazardous material, may not be founded upon mere caprice, whim or idle curiosity.
This type of wholly discretionary and isolated stop must clearly be distinguished from stops and inspections at roadblocks, checkpoints and weighing stations, which satisfy constitutional requirements, as well as the uniform, evenly applied program as earlier spécified.
Many subsequent New York cases have adhered to the Ingle principles, notably People v Simone (39 NY2d 818), People v Sobotker (43 NY2d 559), People v Martin (56 AD2d 876 [2d Dept]), and People v La Borde (66 AD2d 803 [2d Dept]).
The Ingle approach was followed, too, by the United States Supreme Court in Delaware v Prouse (440 US 648), in which it stated that the individual’s reasonable expectation of privacy *236 must not be subject to the discretion of the official in the field. The opinion set forth in no uncertain terms that the discretionary spot check of vehicles on the road is not a sufficiently productive mechanism to justify the intrusion upon Fourth Amendment interests which such a stop entails. The incremental contribution to highway safety of the random spot check does not justify the practice under the Fourth Amendment. Law enforcement officials may not therefore exercise unbridled discretion. Thus, a standardless and unconstrained discretion is an election the Fourth Amendment clearly prohibits. Were a person subject to unfettered governmental intrusion every time he entered a vehicle (even a "1203” commercial vehicle), the security guaranteed by the Fourth Amendment would be seriously circumscribed. The courts must therefore set finite parameters for the serious potential for abuse of discretion which attends the practice of random stops.
In sum, the Prouse opinion (supra) which this court must follow held that the stopping of a vehicle being driven on a public highway, for the purpose of checking the driver’s license and registration, where there was neither probable cause nor reasonable suspicion to believe that the vehicle was being driven contrary to the laws governing the operation of motor vehicles, or that either the car or any of its occupants was subject to seizure or detention in connection with the violation of any other applicable law, constituted an unreasonable seizure under the Fourth Amendment.
Prouse (supra) distinguished the totally sporadic and random stop of a vehicle from stops occasioned by permissible roadblocks where all vehicles are brought to a halt and all are subject to a show of police power before the community. The court noted that at such traffic checkpoints, the motorist could observe that other vehicles are being stopped, could see visible signs of the officers’ authority, and is much less likely to be unjustly alarmed by the intrusion.
In volume 4 of Wayne R. La Fave’s Search and Seizure (§ 10.8 [c] [1987 ed]) the Fourth Amendment ramifications of truck weigh stations are examined. Weigh stations, it notes, are typically adjacent to major highways and near State boundaries. When a particular weigh station is in operation, signs direct all truck traffic to pull off the road for weighing. When every truck passing a fixed point is required to be weighed, the risk of arbitrary action is removed. The brief weighing detention does not involve a search of either the *237 vehicle or the driver and does not violate the Fourth Amendment.
La Fave further explores sobriety checkpoints and driving while intoxicated roadblocks at section 10.8 (d) (op. cit). Officers conducting such roadblocks may stop all traffic, or use other neutral formulae for determining which vehicles to stop. For instance, an officer might detain every 5th or every 10th car that approaches the roadblock. The site of the roadblock and the time of its operation are usually determined by administrative officers in local law enforcement. Additionally, a sign indicating to drivers that they are about to be stopped and suggesting the nature of the stop provide advance warning of the roadblock. They are further normally characterized by flashing lights, police vehicles and the presence of uniformed officers. A properly conducted DWI roadblock therefore is not of a random or arbitrary nature and is considered constitutional.
The Court of Appeals has found valid a properly conducted DWI roadblock in People v Scott (63 NY2d 518). In People v John BB. (56 NY2d 482), the Court of Appeals also allowed a roving roadblock carried out in a uniform and nondiscriminatory manner to obtain information about criminal activity in an area where there had been a recent series of burglaries.
As an overview, when a defendant challenges the legality of a search and seizure, the prosecutor has the burden of going forward in the first instance to show the legality of the police conduct, while the defendant has the ultimate burden of proving the illegality of the police conduct. (People v Berrios, 28 NY2d 361.)
Here, the People have failed to make the requisite initial showing that the stop of defendant’s truck was a legal and valid action under constitutional law. As set forth herein, Officer Mastroangelo lacked reasonable suspicion that a violation of any law had occurred (or at the least was not asked a question by the Assistant District Attorney that would have elicited such response). Neither was there any proof at trial to the effect that the stop and inspection of the Mack tractor trailer was carried out pursuant to a neutral, systematic, objective police department program for the stopping and inspection of commercial vehicles transporting hazardous materials.
*238 The outcome of this case would indeed have been different had there been a demonstration by the District Attorney or law enforcement that a program had been developed at an administrative level, characterized by clear and explicit guidelines, for the stopping and inspection of vehicles or trucks and that a proper stop and inspection had been made pursuant to an evenhanded, nonarbitrary and noncapricious scheme. This is especially so regarding a program for the regular stopping and inspection of hazardous materials trucks in light of the very recent propane truck accident and fire which occurred subsequent to this trial.
Returning to the statutory language of section 14-f (6) of the Transportation Law, the predicate for an inspection is a "lawful” stop. For the reasons set forth herein, the subject stop and inspection was not constitutionally permissible and was thus not lawful. Neither can the stop be upheld on the basis of the transportation regulations, specifically 17 NYCRR 507.4 (c): even that regulation is framed in terms of "reasonableness”. The People have not made a showing of the reasonableness of stopping Deacy’s truck under the circumstances that transpired here. In any event, regulations promulgated pursuant to a statute may not be construed as being empowered to supersede constitutional constraints.
The Assistant District Attorney also attempted to justify this detention and search of the vehicle in reliance upon the administrative search exception to the Fourth Amendment warrant requirement. The court finds this argument unpersuasive. It was not demonstrated that the facts in this case should be categorized in the same way as other enterprises such as the liquor and firearms industries and "chop shops”, which for a long period have been subject to pervasive government regulation. Surprise warrantless government inspection of such businesses takes place at their stationery premises, such as factories and offices, as opposed to vehicles traveling on the public roadway, such as in the situation in this case. Even in instances where warrantless regulatory inspections of those heavily regulated industries are allowed, the nature and extent of the warrantless inspections are still carefully limited in time, place and scope. For a warrantless administrative search to be considered allowable, the underlying inspection program must have both certainty and regularity in application.
*239 Accordingly, the court is constrained to hold under the particular facts of this traffic stop that the two simplified traffic informations filed against defendant Deacy are hereby dismissed since they were issued as a result of an improper and unlawful stop. The other applications raised by counsel have thereby been rendered moot.