816 P.2d 1122

STATE of New Mexico,
Plaintiff–Appellee,

v.

Mark Anthony CLARK, Defendant–
Appellant.

No. 13041.

Court of Appeals of New Mexico.

June 28, 1991.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Marc Gordon, Asst. Public Defender, Carlsbad, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

This court granted defendant's application for interlocutory appeal from the trial court's order denying his motion to suppress. Defendant's appeal raises the following three issues: (1) whether the Motor Transportation Act, NMSA 1978, Sections 65–1–1 to –37 (Repl.Pamp.1990) allows motor transportation division (MTD) officers to make random stops of rental trucks without any reasonable suspicion that a law is being or has been violated; (2) whether defendant's consent to search, "if I don't get into trouble," was a valid consent; and (3) whether the search of the truck can be upheld as a valid administrative search authorized under the Motor Transportation Act. Our calendar notice proposed reversal and the state filed a memorandum in opposition. We are not persuaded by it and thus reverse the trial court's order denying defendant's motion to suppress.

FACTS

Defendant was driving a Budget Rental truck northbound on U.S. Highway 285 when he was stopped by Officer Morales, a MTD inspector. The officer was on duty, in uniform, and driving a marked MTD vehicle. The duties of the officer include ensuring that all commercial vehicles are registered and in compliance with state regulations (such as those addressing fuel and road taxes). In addition, he is a certified police officer with the powers and authorities of all peace officers. Thus, Officer Morales is authorized to make a stop for any law violation and is not limited to MTD violations.

Officer Morales noticed defendant's truck because it had Michigan apportioned plates. He testified that he stopped defendant to ensure that defendant was in compliance with MTD rules and regulations. At the stop, the officer asked defendant whether he had a fuel card and what he was hauling. He also asked for a copy of the rental agreement. The rental agreement was in the name of Cindy Brown. Defendant informed the officer that Brown had paid him to take the truck to Nevada. The officer testified that in his opinion such an arrangement was legal.

Defendant told the officer that he did not know what was being carried in the truck. To check whether defendant was licensed to drive the particular type of truck, the officer asked defendant for his driver's license. Upon determining that defendant had an outstanding warrant in Texas, Officer Morales called for a backup and arrested defendant. Officer Morales and his backup asked defendant several times for consent to search the cargo area of the truck. In response, defendant replied that the officers could search if defendant would not get into trouble. Officer Morales testified at the suppression hearing that he is authorized to search the cargo areas of trucks stopped by him regardless of whether he first obtains the driver's consent. Although defendant was not stopped at a permanent port of entry, the officer testified that he "considers himself" a temporary port of entry. Defendant did

not have a key to the truck's back door. Officers used bolt cutters to open it.

1. The stop of defendant's vehicle.

NMSA 1978, Section 65–5–1 (Repl. Pamp.1990) provides that all commercial motor carrier vehicles shall stop at every port of entry designated by the division. Section 65–1–11 provides that ports of entry can be either temporary or permanent, and that the state highway and transportation department "shall provide the necessary right-of-way, approach roads, ramps and other road facilities" for such ports of entry.

In the present case, the officer had not set out any signs or other indication to vehicle drivers that they would be required to stop. Instead, the officer stopped vehicles randomly and at his own discretion. He testified that he chooses his own schedule of where to patrol, as opposed to his supervisor making the decision. Regarding ports of entry, however, he testified that his supervisor decides when and where a temporary port of entry is set up. There is no indication that his supervisor had directed that a port of entry be set up. Accordingly, the officer testified that defendant's stop was not made at a permanent or temporary port of entry. In light of these facts, we conclude that defendant's stop was not made at a port of entry.

Further, we decline to adopt the officer's contention that he "considers himself" a temporary port of entry. Instead, we are guided by *State v. Creech*, 111 N.M. 490, 806 P.2d 1080 (Ct.App.1991), which holds that in the absence of reasonable suspicion, stops must be carried out pursuant to a plan which embodies explicit, neutral limitations on the conduct of individual officers. In this case, the officer testified that he makes stops on any road he decides; that he, as opposed to his supervisor, makes the decision to search or not; that there are no set guidelines in the statutes that tell him what trucks to stop or search, and that he chooses his own schedule of where he patrols. Based on this information, we conclude that his actions, which

were not carried out at a port of entry, were not authorized by any department practice or regulation.

■■■ The officer testified that defendant was not breaking any traffic laws, nor did he have any reasonable articulable suspicion that defendant had violated or was in the process of violating any law. Instead, the officer testified that he stopped defendant because of the truck's Michigan apportioned plates. Section 65–1–7 provides that "[t]he inspectors designated by the motor transportation division have all the powers of peace officers in all cities, towns, villages and counties in New Mexico with respect to any law or regulation which the motor transportation division is empowered to administer or enforce." Section 65–1–7, however, does not grant motor transportation inspectors more power than other peace officers. Thus, in the absence of any reasonable suspicion, we hold that the officers' actions were not justified. *See State v. Lopez,* 109 N.M. 169, 783 P.2d 479 (Ct. App.1989). Moreover, we cannot conclude that the stop was justified by the roadblock standards set forth in *City of Las Cruces v. Betancourt,* 105 N.M. 655, 735 P.2d 1161 (Ct.App.1987), which considered, among other things, whether the stop-site was selected by an officer in a supervisory position, with limited discretion afforded to field officers.

**2. Defendant's consent.**

The state contends that the initial stop was valid and therefore obviates any need to address whether defendant's consent was valid. The state, however, does not argue that the detention, if illegal did not taint defendant's subsequent consent to search. As discussed in issue one, we hold that the initial stop was invalid. Accordingly, we need not address this issue further.

**3. Administrative searches.**

■■■ The state refers this court to *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), for the proposition that a warrantless search is permissible when done in relation to a pervasively regulated business. Thus, the state contends that officers "should not be limited to making inspections of commercial trucks at only permanent ports of entry or temporary roadblocks."

For purposes of discussion, we will assume without deciding that the commercial trucking industry is a highly regulated industry. Nevertheless, we are not convinced that such status authorized a random highway stop of defendant's vehicle absent a showing that the officer had a reasonable suspicion of criminal conduct. *See United States v. Shaefer, Michael & Clairton Slag, Inc.,* 637 F.2d 200 (3d Cir. 1980) (fact that trucking asphalt was a closely regulated business did not authorize warrantless stop of trucks where officer did not have any reasonable suspicion of unlawful activity nor was the stop made at a general roadblock). *See also Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

As indicated in *Biswell,* a search of a closely regulated business is justified if made pursuant to a regulatory scheme. As discussed above, defendant was not stopped at a port of entry, as designated by Section 65–5–1. Therefore, we hold that the subsequent search, not made pursuant to the regulatory scheme, was invalid. *Cf. United States v. Rivera–Rivas,* 380 F.Supp. 1007 (D.N.M.1974) (search of vehicle, made at a port of entry with signs, held to be a valid administrative search).

■■■ To conclude, we hold that the stop was not made at a port of entry, was not justified by reasonable suspicion or pursuant to a proper roadblock, and was not made pursuant to a plan with explicit, neutral limitations of the conduct of individual officers. Whether reasonable suspicion or probable cause exists justifying the stop of a vehicle generally constitutes a question of law. *See, e.g., State v. Goss,* 111 N.M.

530, 807 P.2d 228 (Ct.App.1991). Because the initial stop was thus not justified, the subsequent administrative search is also invalid. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (discussing fruit of the poisonous tree doctrine). Accordingly, we reverse the trial court's order denying defendant's motion to suppress.

IT IS SO ORDERED.

DONNELLY and BIVENS, JJ., concur.