PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 8/26/96**                    TENTH CIRCUIT

V-1 OIL COMPANY, a corporation, and, )
WILLIAM RICHARDS, )
)
        Plaintiffs/Appellants, )
)
    v. )        No. 95-8057
)
ROGER MEANS, )
)
        Defendant-Appellee. )
)

Appeal from United States District Court
for the District of Wyoming
(D.C. No. 94-CV-745)

F.M. Andrews, Jr. (Robert O. Anderson with him on the brief), of Andrews and
Anderson, P.C., of Riverton, Wyoming, for the appellant.

Terry L. Armitage, of Cheyenne, Wyoming, for the appellee.

Before SEYMOUR, Chief Judge, HOLLOWAY and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiffs V-1 Oil Company and William Richards sued Sergeant Roger Means of

the Wyoming Highway Patrol under 42 U.S.C. § 1983, alleging Means violated their

Fourth Amendment rights by stopping a V-1 propane truck driven by Richards and

ordering Richards to drive the truck to a port of entry for a safety inspection. Means

moved for summary judgment and the district court granted the motion, concluding that

Means was entitled to qualified immunity because the stop and inspection did not violate clearly established law. Although we do not agree with the district court's conclusion that Wyo. Stat. Ann. § 31-18-701(c)[1] applies to these facts, or that this inspection was not within the ambit of the Fourth Amendment, we affirm on other grounds the district court's conclusion that Means was entitled to qualified immunity because the stop and inspection did not violate clearly established law.

Means stopped the V-1 truck at approximately 8:47 a.m. on May 5, 1994, because the front placard required by Wyo. Stat. Ann. § 31-5-959(b)[2] to be on all vehicles transporting hazardous materials was peeling and becoming hard to read, contrary to 49 C.F.R. § 172.516(c)[3]. This initial stop took ten or fifteen minutes. Means told Richards the truck was looking a "little rough" and that he wanted to perform a safety inspection of the truck. At Means' direction, Richards drove the truck three to five miles to a port of

---

[1] Wyo. Stat. Ann. 31-18-701(c) provides:
> The highway patrol division and such other enforcement officers as the department designates are charged with the duty of policing and enforcing the provisions of this act. The enforcement officers have authority to make arrests for violation of any of the provisions of this act. The enforcement officers may require the driver to exhibit the permit issued for the vehicle, to submit to the enforcement officer for inspection any and all bills of lading or other evidences of the character of the lading being transported in the vehicle and require the vehicle to proceed to the nearest department check station or county seat, on the route of the carrier, where the officer may inspect the contents of the vehicle for the purpose of comparing same with bills of lading or other evidences of ownership or of transportation for compensation.

[2] Wyo. Stat. Ann. 31-5-959(b) provides: "The vehicle shall be marked or placarded at such places and [in] such manner as prescribed by regulations adopted by the superintendent."

[3] 49 C.R.F. § 172.516(c) provides in part: "Each placard on a transport vehicle . . . must -- . . .(6) Be maintained by the carrier in a condition so that the format, legibility, color, and visibility of the placard will not be substantially reduced due to damage, deterioration, or obscurement by dirt or other matter."

2

entry. Means testified it was safer to inspect the truck at the port of entry than on the roadside. He also testified he believed he had authority to make random safety inspections without cause and to order a driver to drive a truck to a port of entry for a safety inspection, but he could not cite any specific statutes for that authority.

Means inspected the truck at the port of entry by walking around it and by weighing it, but he did not open any truck doors. The inspection report revealed violations of safety regulations--placard peeling, markings peeling on all sides of the truck, no battery cover, broken windshield, inoperable left side rear marker lamp, and inoperable rear I.D. lamps. Means issued a citation for the peeling placard. Richards alleged the process took about two and a half hours, but Means testified it took about an hour. Means' inspection report, which Richards signed, stated the inspection began at 9:15 a.m. and ended at 9:55 a.m. The citation was later dismissed at Means' request because he had not put the same date on the citation and the inspection report, and because photographs taken of the truck did not develop.

The district court concluded Means had probable cause to stop the truck and arrest the driver for the placard violation, and that Wyo. Stat. Ann. § 31-18-701(c) authorized Means to order the driver to drive the truck to the port of entry for a safety inspection. The court rejected plaintiffs' argument that the warrantless inspection violated Fourth Amendment rights, concluding the inspection was not a search because it was limited to the exterior of the truck and a warrant was unnecessary.

Plaintiffs do not challenge the legality of the initial stop, but contend Means lacked authority to order Richards to drive the truck to the port of entry to conduct a warrantless safety inspection, and that this action violated their clearly established rights under the

3

Fourth Amendment.  We disagree.

We review a grant of summary judgment de novo, applying the same standard used by the district court under Fed. R. Civ. P. 56(c).  See Thompson v. City of Lawrence, 58 F.3d 1511, 1515 (10th Cir. 1995).  We analyze qualified immunity claims decided on summary judgment under the framework set out in Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992), cert. denied 509 U.S. 923 (1993).  When a defendant raises the defense of qualified immunity, plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with facts or allegations sufficient to show the official violated the clearly established law.  Defendant bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute.  Thompson, 58 F.3d at 1515.  For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains.  Woodward, 977 F.2d at 1397.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).

We conclude plaintiffs failed to establish that Means' actions violated clearly established law.  It was not clearly established that a warrantless safety inspection of a commercial truck carrying hazardous material by a highway patrol officer at a port of entry, after a valid traffic stop on a nearby road, violated the Fourth Amendment.

We reject plaintiffs' argument that Means lacked any statutory authority for the

4

safety inspection. Plaintiffs assert that Means concedes he relied only on Wyo. Stat. Ann. § 31-18-701(c) for his authority to conduct warrantless safety inspections, but we find no such concession in the record. It is true that was the only statute relied on by the district court for Means' authority to require Richards to travel to the nearest check station for a safety inspection. It is also true that § 31-18-701(c) does not authorize a highway patrol officer to order a driver to drive a truck to a department check station for a safety inspection. The statute authorizes officers to order a driver to drive a truck to a check station only for inspection of the contents to determine if they match the bills of lading.

However, we may affirm the judgment of the district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court. See Medina v. City and County of Denver, 960 F.2d 1493, 1495 n. 1 (10th Cir. 1992).

Wyo. Stat. Ann. § 31-18-301(c) authorizes highway patrol officers and other agents and employees of the state Department of Transportation to inspect commercial vehicles operated by motor carriers but, under Wyo. Stat. Ann. § 31-18-103(a)(xii), it is inapplicable to private motor carriers operating vehicles with a gross vehicle weight of 26,000 pounds or less. V-1 is a private motor carrier as defined by Wyo. Stat. Ann. § 31-18-101(a)(x)(D), and the record shows the V-1 truck weighed 24,460 pounds. However, § 31-18-103(a)(xii) also provides that all private motor carriers must comply with the hazardous materials regulations contained in Wyo. Stat. Ann. § 31-18-303. That section requires the state transportation department to adopt rules and regulations consistent with comparable regulations of the United States Department of Transportation, and the department has done so. See Wyoming Environmental, Health and Safety Regulations,

5

Transportation Department; Motor Carriers, Chapter I, appendix, § 27(b) and (c) (ERM Computer Services, Inc., 1996).

The federal regulations governing transportation of hazardous materials by motor carrier apply to private carriers. 49 C.F.R. § 177.800(a). 49 C.F.R. § 177.804 requires motor carriers transporting hazardous materials to comply with the general federal motor carrier safety regulations, 49 C.F.R. §§ 390 through 397. 49 C.F.R. § 390.5 defines any motor vehicle transporting hazardous materials as a commercial vehicle subject to the general safety regulations. 49 C.F.R. § 393 sets safety standards for truck equipment.

49 C.F.R. § 396.9 specifically authorizes special agents of the Federal Highway Administration to conduct safety inspections of motor carriers' vehicles in operation. Although Means was not a special agent of the Federal Highway Administration, state regulations give the same authority to highway patrol officers. Wyoming Environmental, Health and Safety Regulations, Transportation Department; Motor Carriers, Chapter I, appendix, § 27, part 1(e), provides that references in the federal regulations "to such federal persons and entities as 'Secretary,' 'Federal Highway Administrator' or 'Administration,' 'Regional Director,' 'District Director' or other similar references shall mean the Wyoming Department of Transportation, its employees, and its duly designated agents, including the Wyoming Highway Patrol enforcing these Rules pursuant to W.S. 37-8-501(b) [now Wyo. Stat. Ann. § 31-18-701]." By that regulation, Wyoming highway patrol officers have the same authority to conduct truck safety inspections that special agents of the Federal Highway Administration have under 49 C.F.R. § 396.9.

We must determine whether, in light of the statutes and regulations authorizing truck inspections, Means' actions violated clearly established Fourth Amendment rights.

Means argues a search warrant was not required because the safety inspection was limited to the exterior of the vehicle and was not a search. See New York v. Class, 475 U.S. 106, 114-115 (1986); United States v. Rascon-Ortiz, 994 F.2d 749, 754 (10th Cir. 1993). Consequently, a search warrant was not required for the inspection. Moreover, even if the inspection was a search, a warrant is generally not required to search motor vehicles because their inherent mobility makes it impracticable to obtain a warrant and because there is a reduced expectation of privacy in motor vehicles, which are subject to pervasive regulation and are driven in plain view on public highways. See California v. Carney, 471 U.S. 386, 390-93 (1985); South Dakota v. Opperman, 428 U.S. 364, 367-68 (1976). In Opperman, 428 U.S. at 367 n.2, the Court noted the warrant requirement has never been held applicable to automobile inspections for safety purposes. A warrant was not required even if the inspection of the V-1 truck was a search.

However, detention of the truck and the driver was a seizure subject to Fourth Amendment requirements. See United States v. McSwain, 29 F.3d 558, 561 (10th Cir. 1994). Ordinarily, a brief investigative detention must be based on reasonable articulable suspicion. See McSwain, 29 F.3d at 561. Probable cause is required for a more intrusive seizure that rises to the level of an arrest. See United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir. 1994).

Means had probable cause to believe plaintiffs were violating the placard requirement and could have taken Richards into formal custodial arrest for that violation. Instead, he used his discretion to issue a citation rather than arrest the driver for that violation. See Wyo. Stat. Ann. § 31-5-1204(d)(ii) (giving police officers discretion to issue citations or to arrest persons for violating regulations relating to vehicles

7

transporting hazardous materials under Wyo. Stat. Ann. § 31-5-959). The purpose of the continued detention was to conduct a safety inspection. Ordinarily, a detention must be reasonably related in scope to the circumstances that justified the stop in the first place, and a detention that exceeds the scope of the underlying justification for the initial stop violates the Fourth Amendment. See McSwain, 29 F.3d at 561.

The placard violation observed by Means did not give him reason to believe the truck was unsafe, and it could not provide reasonable articulable suspicion to detain the truck and the driver for a safety inspection. There was some evidence that Means thought the inspection was warranted. After the stop for the placard violation, Means told Richards the truck looked a "little rough" and that he wanted to perform a safety inspection. However, this is insufficient to establish on summary judgment that there was probable cause or reasonable articulable suspicion to justify an inspection. Whether Means had probable cause or reasonable articulable suspicion to inspect the truck was a question of fact on the record presented that could not be resolved on summary judgment. Moreover, Means testified at his deposition that he conducts safety inspections of stopped trucks whenever he has time, and that he has authority to conduct random truck safety inspections. Viewed in the light most favorable to plaintiffs, the evidence suggests that Means' inspection of the truck was not based on reasonable suspicion.

Means argues the inspection was a valid warrantless administrative inspection of property used in a closely regulated industry. Warrantless inspections of commercial premises used in closely regulated industries are permissible if authorized by statute or if necessary to further a substantial state interest, and if the statute provides a constitutionally adequate substitute for a warrant. A statute must sufficiently inform the

8

commercial property owner that his property will be subject to periodic inspections undertaken for specific purposes, and must limit the discretion of inspectors in time, place, and scope. New York v. Burger, 482 U.S. 691, 701-03 (1987). Burger addressed only whether a warrant was required, not whether probable cause or reasonable suspicion was required. Although Means' inspection of the exterior of the truck was not a search subject to the warrant requirement, we conclude the principles of Burger are applicable here.

In Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523 (1967), the Court held a warrant was required to conduct a regulatory inspection of an apartment for housing code violations, but that a lessened probable cause standard applied to regulatory inspections. The Court concluded that articulable individualized suspicion of code violations was not required, stating that "[p]robable cause" for such a warrant exists

> "if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards . . . may be based upon the passage of time, the nature of the building (e.g., a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling."

387 U.S. at 538. See also Burger, 482 U.S. at 702 (traditional probable cause requirements have lessened application in context of inspection of closely regulated industry).

Here, although a warrant was not required, reasonable legislative or administrative standards were required because traditional probable cause and reasonable suspicion were lacking. The proper test for whether legislative or administrative standards for a regulatory inspection are reasonable is whether the inspection satisfies the requirements

9

of <u>Burger</u>.  The random detention and inspection of a vehicle used in a closely regulated industry therefore must meet essentially the same requirements as a warrantless regulatory search of business premises.  <u>See</u>, <u>e.g.</u>, <u>United States v. Shaefer, Michael and Clairton Slag</u>, 637 F. 2d 200 (3d Cir. 1980); <u>State v. A-1 Disposal</u>, 415 N.W. 2d 595 (Iowa 1987); <u>State v. Moore</u>, 701 P. 2d 684 (Kan. 1985).  <u>See generally,</u> 4 Wayne R. LaFave, Search and Seizure § 10.2(d) (1996).

There are no Supreme Court or Tenth Circuit cases addressing the constitutionality of a random safety inspection of a commercial vehicle under the regulatory inspection doctrine.  In <u>United States v. Seslar</u>, 996 F. 2d 1058 (10th Cir. 1993), the court held a random stop of a rental truck to check for required permits was unconstitutional, but the regulatory search doctrine was inapplicable because the truck was not a commercial vehicle.

There is no clear weight of authority from other jurisdictions.  Several courts have upheld random inspections of commercial vehicles as valid regulatory searches.  <u>See</u> <u>United States v. Burch</u>, 906 F. Supp. 592, 598 (D. Kan. 1995); <u>A-1 Disposal</u>, 415 N.W. 2d at 598; <u>State v. Williams</u>, 648 P.2d 1156, 1162 (Kan. App. 1982); <u>Drive Trans. Corp. v. New York City Taxi and Limousine Com'n</u>, 513 N.Y.S. 2d 920, 921 (1987); <u>People v. Velez</u>, 441 N.Y.S. 2d 176, 181-82 (1981).  <u>See also</u> <u>Moore</u>, 701 P.2d 684 (upholding stopping all garbage trucks at temporary weigh station as valid regulatory search).  Several courts have held that random inspections of commercial vehicles violate the Fourth Amendment.  <u>See</u> <u>People v. Deacy</u>, 530 N.Y.S. 2d 753 (1988); <u>State v. Myers</u>, 580 N.E.2d 61 (Ohio App. 1990).  <u>Cf.</u> <u>Shaefer</u>, 637 F.2d at 204 (court rejected administrative search justification for weighing of trucks without reasonable suspicion because purpose

10

was to investigate possible short-weighting of materials supplied for state road project rather than enforcement of truck weight regulations; State v. Clark, 816 P.2d 1122, 1124 (N.M. App. 1991) (rejecting administrative search justification for random stop because such stops were not authorized by statute); State v. Thorp, 856 P.2d 1123, 1125 (Wash. App. 1993) (rejecting administrative search justification for random stop to enforce forest products regulations because state did not establish that forest products industry was closely regulated). Whether the Fourth Amendment permits random inspections of commercial vehicles without probable cause or reasonable articulable suspicion is not clearly established. See 4 LaFave § 10(c), pp. 686-87.

The Burger test is clearly established law, but the safety inspection of the V-1 truck is not clearly invalid under Burger. The V-1 truck was subject to inspection because it was a commercial vehicle transporting hazardous material. See Wyo. Stat. Ann. §§ 31-18-103(a)(xii) and 31-18-303; 49 C.F.R. § 396.9; Wyoming Environmental, Health and Safety Regulations, Transportation Department; Motor Carriers, Chapter I, appendix, § 27, part 1(e).

Motor carriers are closely regulated by both state and federal governments. See 49 C.F.R. §§ 101-399; Wyo. Stat. Ann. §§ 31-18-101 through 31-18-902. See also, e.g., United States v. Dominguez-Prieto, 923 F. 2d 464, 468 (6th Cir. 1991), cert. denied 500 U.S. 936 (1991); Williams, 648 P. 2d at 1160-61; McCauley v. Com., 435 S.E. 2d 891, 892-94 (Va. App. 1993), aff'd on reh'g 443 S.E. 2d 164 (Va. App. 1994). Transportation of hazardous materials by motor carriers is even more closely regulated. See 49 C.F.R. §§ 177 and 397; Wyo Stat. Ann. §§ 31-5-959 and 31-18-303. The state clearly has a substantial interest in regulating that industry to protect public safety on the highways.

11

See Dominguez-Prieto, 923 F. 2d at 468; Williams, 648 P. 2d at 1161.  It could reasonably be concluded that random truck safety inspections are necessary to further that interest.  Trucks can easily avoid fixed checkpoints and, by use of citizens' band radios, can avoid temporary checkpoints.  See A-1 Disposal, 415 N.W. 2d at 599; Williams, 648 P. 2d at 1161; McCauley, 435 S.E. 2d at 155.

It could also reasonably be concluded that the statutes and regulations authorizing inspection are an adequate substitute for a warrant.  49 C.F.R. § 396.9(a), as modified by Wyoming regulations, authorizes highway patrol officers and other transportation department agents and employees "to enter upon and perform inspections of motor carrier's vehicles in operation."  Under Wyo. Stat. Ann. § 31-18-303(c), transportation department agents and employees operate ports of entry and other designated locations on highways where they may stop and inspect vehicles.  Highway patrol officers, by definition, patrol the highways.  A motor carrier transporting hazardous material on the highways in Wyoming "'cannot help but be aware that his property will be subject to periodic inspection.'"  Burger, 482 U.S. at 703 (quoting Donovan v. Dewey, 452 U.S. 594, 600 (1981)).  See McCauley, 435 S.E.2d at 152-55 (truck safety inspection at temporary checkpoint under state version of 49 C.F.R. § 396.9 held valid under Burger.) See generally, A-1 Disposal, 415 N.W.2d at 597, 599-600 (random safety inspection held valid under Burger); Williams, 648 P.22 1156 (random safety inspection held a valid regulatory inspection).

In V-1 Oil Co. v. Wyoming Dept. of Environmental Quality, 902 F.2d 1482, 1487 (10th Cir.), cert. denied 498 U.S. 920 (1990), the court held that a statute authorizing the inspection of any commercial property in the state suspected of causing pollution was not

an adequate substitute for a warrant. Because the statute applied to every business in the state, it was a statute of "general application" that provided no notice to any owner that property would be subject to warrantless inspections, and provided no assurance of regularity of inspections. Consequently, the inspections authorized were "'so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials.'" 902 F.2d at 1487, quoting Donovan, 452 U.S. at 599.

Here, by contrast, the inspections are conducted pursuant to narrow statutes and regulations directed at a particular industry. See V-1 Oil Co., 902 F.2d at 1487. While the statutes and regulations do not establish a fixed number of inspections of a particular business during any given time period, that is not essential. In Burger, the court upheld inspections conducted under a New York statute that did not require any particular number of inspections in any given time. 482 U.S. at 694 n. 1. The Court noted:

> While such limitations, or the absence thereof, are a factor in an analysis of the adequacy of a particular statute, they are not determinative of the result so long as the statute, as a whole, places adequate limits upon the discretion of the inspecting officers. Indeed, we have approved statutes authorizing warrantless inspections even when such statutes did not establish a fixed number of inspections for a particular time period. See United States v. Biswell, 406 U.S. 311, 312, n 1 . . . (1972). And, we have suggested that, in some situations, inspections must be conducted frequently to achieve the purpose of the statutory scheme. Id., at 316 . . . . ("Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential") (emphasis added).

482 U.S. at 711 n. 21. Truck inspections authorized by the statutes and regulations at issue here are no more uncertain or irregular than the junkyard inspections authorized by the statute in Burger.

The regulations also place adequate limits on the discretion of inspection officers. The regulations provide notice of who is authorized to conduct the inspections. Only

13

special agents of the Federal Highway Administration, Wyoming patrol officers, and other employees and agents of the Wyoming Department of Transportation are authorized to conduct the safety inspections. See 49 C.F.R. § 396.9; Wyoming Environmental, Health and Safety Regulations, Transportation Department; Motor Carriers, Chapter I, appendix, §27, part 1(e). The regulations make it clear the inspections are limited in scope to safety concerns. See 49 C.F.R. §§ 396.9 - 396.11. They do not authorize a general search by any law enforcement officer.

The regulations limit the place of inspection of vehicles to highways of the state. Wyo. Stat. Ann. § 31-18-303, which requires the state transportation department to adopt regulations consistent with the federal regulations governing transportation of hazardous materials, applies only to vehicles on highways of the state. See Wyo. Stat. Ann. § 31-18-103(a)(xii). Because vehicles are mobile, any further restriction on the place of inspection would be impracticable. A restriction on the time of inspection would also be impracticable because trucks operate around the clock. See Dominguez-Prieto, 923 F.2d at 470.

Plaintiffs also contend that Means' order to drive to the port of entry was unlawful. Although there was no express statutory authority for Means to order the truck to the port of entry three to five miles away for a safety inspection, it was uncontroverted that he conducted the inspection there because it was safer than a roadside inspection. Police are not required to use the least intrusive means in the course of a stop, only reasonable means. United States v. Sharpe, 470 U.S. 675, 686 (1985); Melendez-Garcia, 28 F.3d at 1052. Because the port of entry was only three to five miles from the site of the stop, requiring the driver to drive the truck there caused only a limited increase in the

14

intrusiveness of the inspection.  See Pennsylvania v. Mimms, 434 U.S. 106 (1977) (ordering driver out of car during lawful traffic stop is justified by safety concerns and causes only a de minimis increase in intrusiveness).  Requiring the driver to drive to the port of entry where the inspection could be conducted safely was no more intrusive than reasonably necessary to carry out the purposes of the inspection.  See United States v. Pino, 855 F.2d 357, 362 (6th Cir. 1988), cert. denied 493 U.S. 1090 (1990) (officer's request that defendant stopped for traffic violation drive to nearby overpass because shoulder was narrow and it was raining was justified by safety concerns and was no more intrusive than necessary to effectuate the purposes of the stop).  See also Florida v. Royer, 460 U.S. 491, 504 (1983) ("there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention" without making the detention more intrusive than necessary).

We conclude the inspection did not violate clearly established law.  It was not clearly outside the scope of a valid regulatory inspection.  We do not hold that the truck inspection was constitutional, only that it was not clearly unconstitutional.  Under Siegert v. Gilley, 500 U.S. 226 (1991), that is all that is required to determine whether a defendant is entitled to qualified immunity.

We hold the truck inspection did not violate clearly established law and Means is entitled to qualified immunity.  The judgment is AFFIRMED.

15