Dear Honorable John J. Hafer
You have asked for our opinion on the constitutionality of unannounced inspections at the premises of motor carriers conducted pursuant to Annotated Code of Maryland, Transportation Article ("TR"), § 25-111(h). Under that statute, police officers and other specified State officials are authorized to enter premises of a motor carrier during normal business hours to inspect equipment and to review and copy records related to the carrier's compliance with various State and federal regulatory programs. Those programs concern vehicle safety, driver qualifications, and the transportation of hazardous materials.
For the reasons stated below, we conclude that TR § 25-111(h) is constitutional and provides adequate notice that equipment and records on the premises of motor carriers are subject to limited inspections without a warrant or specific advance notice.
 I The Inspection Program
TR § 25-111(h) authorizes police officers and other specified State officials to enter the premises of a motor carrier "during normal business hours" to inspect equipment and to review and copy certain records that motor carriers are required to maintain, including driver records.[1] In particular, law enforcement personnel may review and copy records relating to federal motor carrier safety regulations,[2]
State and federal hazardous material regulations,[3] the preventive maintenance program of the Motor Vehicle Administration ("MVA"),[4] and the laws and regulations administered by the Public Service Commission.[5]
TR § 25-111(h)(1). Trained personnel of the Commercial Vehicle Enforcement Division of the Maryland State Police may review and copy records related to State hazardous materials regulations, the MVA preventive maintenance program, or other safety regulations adopted under the statute.[6] TR § 25-111(h)(2). The statute lists some examples of the records subject to inspection — e.g., driver qualification files, hours of service records, drug and alcohol testing records of drivers, and insurance records. Id.
The inspection program authorized by TR § 25-111(h) is designed to ensure compliance with driver qualification and service requirements, hazardous material regulations, and vehicle maintenance and repair schedules. The program seeks to promote public safety by preventing the operation of vehicles that are not adequately maintained, the transportation of hazardous materials in an unsafe manner, or the operation of vehicles by unqualified persons.[7]
The statute establishing the MVA preventive maintenance program also authorizes warrantless compliance inspections. In particular, TR § 23-303(b) authorizes a State police officer, a hazardous materials inspector of the Maryland Department of the Environment, or a Public Service Commission inspector to enter the premises of a motor carrier "during regular business hours" to inspect equipment and to review and copy records related to the carrier's compliance with the preventive maintenance program. See also COMAR 11.22.01.04C(4).
Neither TR § 25-111(h) nor TR § 23-303(b) requires that inspectors have probable cause to believe that the standards have been violated as a prerequisite to an inspection.
You ask whether the entry of government officials onto the premises of a motor carrier for the purpose of conducting an inspection under TR § 25-111(h), if there has been no specific advance notice to the carrier, violates the proscriptions against unreasonable searches in the State and federal constitutions.
 II Administrative Inspections and the Fourth Amendment
The Fourth Amendment to the United States Constitution and Article 26 of the Maryland Declaration of Rights protect against unreasonable searches and seizures.[8] A search conducted without a warrant, under circumstances that are not within one of the recognized warrant exceptions, is deemed unreasonable. Camara v. Municipal Court of LosAngeles, 387 U.S. 523, 529 (1967).
While the Fourth Amendment generally extends to commercial premises, the Constitution allows some latitude for warrantless inspections under regulatory schemes because the expectation of privacy in commercial premises is significantly different from the privacy interest in a home.Donovan v. Dewey, 452 U.S. 594, 598 (1981). The Supreme Court has long recognized an exception to the warrant requirement for administrative inspections of closely regulated businesses. See New York v. Burger,482 U.S. 691, 699-702 (1987). An industry is closely regulated if the "regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Burger, 482 U.S. at 705 n. 16 (quoting Donovan v. Dewey,452 U.S. 594, 600 (1981)). In assessing whether an industry is closely regulated, the courts also consider the history of regulation of the industry and the existing regulatory framework. Id. at 705-7.
A warrantless inspection of a pervasively regulated business is reasonable if three criteria are met. Burger, 482 U.S. at 702-3. First, there must be a substantial governmental interest that informs the regulatory scheme under which the inspection is made. Second, the warrantless inspection must be necessary to further the regulatory scheme. Finally, the statute's inspection program, in terms of certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. In particular, the regulatory scheme "must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." Id. at 703. With respect to the discretion of the inspectors, the statute must limit the search in time, place, and scope. Id.
 III Application of the Burger Standard
A. Closely Regulated Industry
There can be little dispute that the commercial motor carrier industry is closely regulated. See V-1 Oil Co. v. Means, 94 F.3d 1420, 1426 (10th Cir. 1996); United States v. Dominguez-Prieto, 923 F.2d 464 (6th Cir.),cert. denied, 500 U.S. 936 (1991). Long-standing federal regulations govern many aspects of the industry, including driver qualifications, motor vehicle parts and accessories, accident reporting, itinerary reporting, drivers' hours of service, vehicle inspections, repair and maintenance, transportation of hazardous materials, and other safety issues. Dominguez-Prieto, 923 F.2d at 468 (citing 49 C.F.R. § 101-399 and extensive regulation by nearly all states). Maryland law addresses many of the same areas, often referencing or incorporating federal standards. See, e.g., TR § 16-801 et seq. (commercial driver's license); TR § 23-301 et seq. (preventive maintenance program); TR § 24-101 et seq. (size, weight, and load restrictions); COMAR11.16.01 (incorporating federal hazardous material regulations). Given the extensive regulation of the industry by the federal government and by most states, including Maryland, and the concomitant requirements that a carrier document its compliance with those regulations, a motor carrier is on notice that its equipment and compliance records are subject to periodic inspection.
B. Reasonableness of Warrantless Inspections
 1. Substantial Governmental Interest
The governmental interest that underlies the inspections authorized by TR § 25-111(h) is safety, especially safety of the motoring public. Congress has established a regulatory scheme to promote the safe operation of commercial motor vehicles, and to ensure compliance with traffic laws and with commercial motor vehicle safety standards.49 U.S.C.A. §§ 31131 et. seq. The General Assembly has recognized the need to monitor compliance with motor carrier safety requirements by authorizing the MVA preventive maintenance program and other safety regulations.
TR § 25-111(h) provides a method for assuring, by means of periodic unannounced inspections, compliance with these federal and State safety standards. The safe operation of commercial vehicles using State highways is the governmental interest that lies at the heart of those regulatory schemes. V-1 Oil, 94 F.3d at 1426; Dominguez-Pietro, 923 F.2d at 468.
2. Need for Warrantless Inspections Without Advance Notice
Inspections of vehicles and records further the interest in the safe operation of motor carrier vehicles. For example, driver records reveal whether the driver has a valid license to operate the particular class of vehicle, whether the driver has exceeded the maximum number of hours of service to such a degree that driver fatigue may be an issue, and whether the driver is physically fit to operate the vehicle. Inspection of load manifests and shipping documents may confirm the location of the driver at specific times, and may allow determination of the appropriateness of the types of cargo being transported.
Unannounced inspections, whether they occur roadside or at a motor carrier's business premises, are reasonably necessary to enforce the statutory and regulatory scheme. Notice of an impending inspection would enable a non-compliant driver or business owner to update stale records or to alter records evidencing a violation, thereby frustrating the purpose of the inspection — to detect and deter safety violations.See Dominguez-Pietro, 923 F.2d at 469; V-1 Oil, 94 F.3d at 1426; see alsoDonovan v. Dewey, 452 U.S. at 600.
3. Adequacy of Statute as Substitute for a Warrant
While TR § 25-111(h) does not require probable cause or some other degree of suspicion as a prerequisite for an inspection, it does perform the basic functions of a warrant. First, the statute places a motor carrier on notice that it will be subject to compliance inspections of its equipment and specified records. The statute also limits the scope of inspections to equipment and documents related to enforcement of specifically identified regulations — i.e., federal and State motor carrier safety regulations, hazardous material regulations, the MVA preventive maintenance program, and related regulations.
Second, the statute reasonably restricts the time and place for conducting inspections. An inspection of records and equipment on the business premises of a motor carrier is limited to normal business hours.[9] This limitation is apparently designed to accommodate the need for unannounced inspections to the convenience of the carrier.[10]
Third, the statute also identifies the personnel authorized to conduct an inspection. Under TR § 25-111(h)(1), only a police officer, hazardous materials inspector, or Public Service Commission inspector may enter premises to inspect records and equipment; under TR § 25-111(h)(2), only a police officer may enter premises to inspect, review and copy driver records. The statute also contains a very specific definition of "police officer." See TR § 25-111(a)(3).
In summary, TR § 25-111(h) advises a motor carrier that inspections are made pursuant to the law; it defines the time, place and scope of an inspection; it identifies inspecting officers; and it limits the discretion of those officers. It thus performs the basic functions of a warrant. See Burger, 482 U.S. at 702-03.
 IV Conclusion
The inspections authorized by TR § 25-111(h) satisfy the warrant exception for "closely-regulated" businesses that was recognized in Burger. They are therefore constitutional.
J. Joseph Curran, Jr.Attorney General
Kristine HoffmanAssistant Attorney General
Robert N. McDonaldChief Counsel Opinions Advice
[1] That subsection provides:
 (1) During normal business hours, a police officer, a hazardous materials inspector, or a Public Service Commission inspector may enter the premises and inspect equipment and review and copy records of motor carriers subject to the rules or regulations adopted under § 22-409 or § 23-302 of this article, Federal Motor Carrier Safety Regulations, Federal Hazardous Material Regulations, or Public Service Commission laws and regulations.
 (2) During normal business hours, trained personnel from the Commercial Vehicle Enforcement Division of the Department of State Police may enter the premises and inspect, review, and copy records of motor carriers subject to the regulations adopted under this section, § 22-409 of this article, or § 23-302 of this article, including:
(i) Any record required by this section;
(ii) Driver qualification files;
(iii) Hours of service records;
 (iv) Drug and alcohol testing records of drivers required to be tested under this section; and
(v) Insurance records.
TR § 25-111(h).
[2] See generally 49 C.F.R. Parts 40, 350-399.
[3] See 49 C.F.R. Parts 106-180; TR § 22-409; COMAR 11.16.01
(incorporating specified federal regulations).
[4] See TR § 23-302. The preventive maintenance program applies to certain types of vehicles, including trucks (Class E vehicles) with gross weight exceeding 10,000 pounds, tractors (Class F vehicles), certain trailers and semi-trailers (Class G vehicles), passenger buses (Class P vehicles), and certain multi-purpose vehicles (Class M) used to transport passengers. TR § 23-301(f). The program was established "to reduce and prevent traffic accidents and to promote highway safety." Chapter 106, Preamble, Laws of Maryland 1988. The statute establishes a schedule for the inspection, maintenance, and repair of vehicles, and requires compliance as a prerequisite to operation of a vehicle. TR § 23-302. Under the statute, the MVA has adopted regulations that establish maintenance standards for various classes of vehicles. See TR § 23-303; COMAR 11.22.02 through 11.22.04.
A violation of the statute or of the MVA regulations is a misdemeanor. In addition, the MVA may suspend the registration of a vehicle that does not meet the statute's maintenance requirements. TR § 23-305.
[5] See, e.g., Annotated Code of Maryland, Public Utility Companies Article, § 9-201 et seq. (regulation of motor carriers).
[6] Under TR § 25-111(f), the MVA, in consultation with the State Police, is to formulate rules and regulations necessary to ensure safe operation of certain categories of vehicles.
[7] As you noted in your request, in 1999 the Legislature amended TR § 25-111(h) and related provisions in certain respects. Chapter 16, Laws of Maryland 1999. Among other things, the 1999 legislation: (1) amended TR § 23-302(c) to eliminate a requirement that a vehicle carry documentary proof of compliance with the MVA preventive maintenance program, and replaced it with a simple prohibition against operation of a vehicle unless it is registered and maintained in compliance with the preventive maintenance program; (2) added to TR § 25-111(h)(2) the list of examples of records to be inspected during an inspection; (3) revised the definition of a "police officer" in TR § 25-111(a)(3) authorized to conduct inspections to include only those officers expressly certified to conduct inspections, rather than any uniformed police officer; (4) changed the description of the allowable time for inspections from "regular business hours" to "normal business hours"; and (5) conformed language in the statute to its federal counterparts and to related regulations. None of these amendments affects the answer to the constitutional question that you pose.
[8] Article 26 is interpreted consistently with the Fourth Amendment.See, e.g., Givner v. State, 210 Md. 484, 124 A.2d 764 (1956).
[9] By contrast, roadside inspections under TR § 25-111(b) are not limited in time. The inspections are, however, limited to highways of the State; any further restriction on location would be impractical, in light of the mobility of vehicles. See V-1 Oil, 94 F.3d at 1427;Dominguez-Pietro, 923 F.2d at 470.
[10] In your letter, you note that a business located in a rural area may not normally have staff on duty at its office during traditional business hours. The statute does not purport to authorize forcible entry. Cf. Colonnade Catering Corp. v. United States, 397 U.S. 72
(1970). Thus, we presume that an inspector who confronts an unstaffed office will contact the motor carrier to obtain access to the premises or return during the carrier's normal business hours.
 *Page 42