STATE of Iowa, Appellee,

v.

A–1 DISPOSAL, Appellant.

STATE of Iowa, Appellee,

v.

Albert Michael CHURCHILL, Appellant.

No. 87–104.

Supreme Court of Iowa.

Nov. 25, 1987.

Mark E. Liabo of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Thomas J. Miller, Atty. Gen., and Daniel W. Perkins, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Defendants appeal their convictions for operating overweight vehicles in violation of Iowa Code section 321.463 (1985). Before trial, both defendants moved to suppress the evidence against them claiming their commercial trucks were stopped by Iowa department of transportation (DOT) officials at a temporary checkpoint in violation of the Iowa Code, the Iowa Constitution and the fourth amendment to the United States Constitution. Their cases were consolidated for appeal. Defendants now contend that the trial court erred in overruling their motions to suppress and in finding them guilty of the overweight charges. Concluding (1) that Iowa Code chapter 321 does not require a DOT official

to have reasonable cause to suspect a weight violation before stopping a commercial carrier truck to weigh it at a temporary checkpoint, and (2) that the stops were within the bounds of reasonableness of the fourth amendment and the Iowa Constitution, we affirm.

I. *Background facts and proceedings.* Defendant Albert Michael Churchill and Ricky Raymond Ralston are both employees of the A–1 Disposal Company of Cedar Rapids (A–1 Disposal). Within a twenty-day period, both men, while driving refuse trucks for A–1 Disposal, were stopped by officers of the DOT during daylight hours at a temporary checkpoint set up outside the Cedar Rapids landfill. The checkpoint was located near a curve in the road which obscured it from the view of oncoming traffic. The location allowed ample room off the traveled portion of the road to stop vehicles and was selected because of the low volume of automobile traffic on that road. There were no advance signs, lights or warning devices, however, to alert drivers to its location. Testimony given by the officers who stopped the drivers indicates the stops were randomly made from among commercial trucks over five tons in weight that were headed for the landfill.

At the checkpoint, the trucks were weighed on portable scales and found to be in excess of the legal weight limits. Both men were charged in two counts with violating Iowa Code section 321.463. The separate charges were for exceeding legal gross weight of the vehicle and for exceeding its legal tandem axle weight. Their cases were set for trial with Churchill as the named defendant in his trial and A–1 Disposal substituted as the named defendant in Ralston's trial.

Motions to suppress were filed by both defendants asserting that the evidence against them was gathered in violation of Iowa Code section 321.465, article I, section eight of the Iowa Constitution, and the fourth amendment to the United States Constitution. After evidentiary hearings, the trial court overruled both motions, finding the stops governed not by Iowa Code section 321.465 but by Iowa Code section 321.476. Based on stipulated evidence, the trial court entered judgment of conviction against both defendants on both charges.

The cases were consolidated for appeal. Defendants assert that the trial court erred in overruling their suppression motions and finding them guilty of the charges. Concluding the defendants were legally stopped pursuant to Iowa Code section 321.476 under circumstances comporting with state and federal constitutional constraints, we affirm.

II. *Iowa Code provisions bearing on vehicle stops.* The parties are in disagreement over which section of the Iowa Code is relevant to this appeal. The State argues that section 321.476, which has no language constraining the Iowa DOT from making random stops, is controlling. The defendants counter that section 321.465, requiring a peace officer to have "reason to believe" an offense has been committed before making a stop, applies to DOT officers under the present facts. They point to our recent decision in *State v. Scott*, 409 N.W.2d 465 (Iowa 1987), as dispositive of the reasonable cause issue.

In *Scott* we found that the officer in that case had reasonable cause to stop the truck in question because refuse he observed protruding from the rear of the truck indicated it was filled beyond capacity. Resolving the issue under section 321.465, we expressly refrained from addressing the State's alternative argument that Iowa Code section 321.476 obviated the need for reasonable cause to stop a vehicle for a weight check. *Scott*, 409 N.W.2d at 468.

In the case before us, the trial court ruled that these stops were executed pursuant to section 321.476 and, therefore, reasonable cause was not required for the stops. The State asserts the trial court's conclusion on appeal and does not contend that the DOT officers in the present cases had reason to believe, pursuant to section 321.465, that defendants' trucks were overweight before stopping them. We are asked, therefore, to construe and apply section 321.476. Our conclusions in *Scott* are not controlling in this case unless we find that section 321.476 does *not* obviate the

need for reasonable cause to stop a commercial vehicle on the highways.

Faced, as we are, with the potential conflict between Iowa Code sections 321.465 and 321.476, our ultimate goal is to effectuate the intent of the legislature. Iowa R.App.P. 14(f)(13); *Iowa S. Util. Co. v. Iowa State Commerce Comm'n*, 372 N.W. 2d 274, 277–78 (Iowa 1985). In determining that intent, we may consider the object sought to be obtained by the legislature, the circumstances under which the statute was enacted, former statutory provisions and legislative history, and the consequences of a particular construction. Iowa Code § 4.6; *Smith v. Linn County*, 342 N.W.2d 861, 863 (Iowa 1984).

■ The purpose behind legislation regulating size, weight and load limits on public highways is both to promote the safety of highway travel and to reduce the deterioration of the highways caused by heavy traffic. *State v. Sands*, 280 N.W.2d 370, 371 (Iowa 1979). To assure compliance with weight regulations, some method of weighing vehicles is essential. When Iowa Code section 321.465, the statute which defendants claim controls the stops made by the DOT officers in this case, was enacted in 1937, public weigh stations were already in operation. *See* 1937 Iowa Acts ch. 134, § 489. The portion of section 321.465 pertinent to this discussion has not been changed since its enactment and states:

> Any peace officer having reason to believe that the weight of a vehicle and load is unlawful is authorized to require the driver to stop and submit to a weighing of the same either by means of portable or stationary scales and may require that such vehicle be driven to the nearest public scales.

The language of this section requiring peace officers either to carry portable scales or to direct stopped vehicles to stationary scales implies that the legislature was referring to peace officers on roving patrol. Notably, the officer in *Scott* was on "routine patrol" when he stopped the defendant's refuse truck. *Scott*, 409 N.W. 2d at 466. Peace officers on roving patrol or routine patrol, then, must have reason-

able cause to believe a vehicle is overweight before stopping it.

When the legislature enacted Iowa Code sections 321.476 and 321.477 four years later, it did not include a reasonable cause element. *See* 1941 Iowa Acts ch. 177. Section 321.476, substantially unchanged since its enactment in 1941, reads in pertinent part:

> Authority is hereby given to the department to stop any motor vehicle or trailer on the highways for the purposes of weighing and inspection, to weigh and inspect the same and to enforce the provisions of the motor vehicle laws relating to the registration, size, weight, and load of motor vehicles and trailers.

Section 321.477, amended since its enactment to add authority over vehicle registrations, authorizes the DOT to select its own peace officers for these limited purposes:

> The department may designate by resolution certain of its employees upon each of whom there is hereby conferred the authority of a peace officer to control and direct traffic and weigh vehicles, and to make arrests for violations of the motor vehicle laws relating to the operating authority, registration, size, weight and load of motor vehicles and trailers and registration of a motor carrier's interstate transportation service with the department.

Evidence that the legislature intended this section to apply to weigh stations can be found in 1980 Iowa Acts chapter 1100, section 13, which reads:

> The director of the department of transportation shall give consideration to increasing the hours of operation and employees designated to operate permanent weigh stations as provided by section three hundred twenty-one point four hundred seventy-seven (321.477) of the Code.

The purpose of these sections clearly includes enforcement of weight limitations. While permanent weigh stations are important in assuring compliance with weight laws, they have limitations. The number of permanent weigh stations is limited, and the cost of maintaining numerous addition-

al stations likely outweighs the benefits. Their locations are easily ascertained by carriers and can be avoided if overweight carriers plan ahead to travel when the stations are closed. Temporary stations, on the other hand, can be set up or dismantled quickly at various locations along the highways and are comparatively inexpensive. Given the importance of temporary weigh stations, we construe sections 321.476 and 321.477 to apply to temporary checkpoints as well as permanent weigh stations.

■ Finally, the legislature made it clear that peace officers, including DOT peace officers, do not need reasonable cause to stop vehicles for weight inspections under Iowa Code section 321.492 which was enacted in 1943. *See* 1943 Iowa Acts ch. 164, § 4. In present form section 321.492 (1985) states in relevant part:

> Any peace officer is authorized to stop any vehicle to require exhibition of the driver's motor vehicle license, to serve a summons or memorandum of traffic violation, to inspect the condition of the vehicle, to inspect the vehicle with reference to size [and] weight. . . .

> All peace officers as defined in section 801.4 subsection 7, paragraphs "a", "b", "c" and "h" may, having reasonable grounds [to believe] that equipment violations exist, conduct spot inspections.

Section 801.4(7)(h) referred to in paragraph two above specifically includes peace officers empowered pursuant to section 321.-477. Section 321.492 allows stops without reasonable cause for any of the above reasons except equipment violations.[1] We conclude from construing these sections together that the Iowa Code does not require DOT officers to have reason to believe the weight of a vehicle is unlawful before stopping it at a checkpoint along the highway to weigh it.

III. *Constitutional reasonableness of an investigatory stop.* Despite any authorization under Iowa Code section 321.476, defendants still contend that they were stopped in violation of their rights under the Iowa Constitution and the fourth amendment to the United States Constitution. The attack here by the defendants is on the stops of their trucks and not on the constitutionality of section 321.476. Confronted as we are with alleged constitutional violations, we make our own independent evaluation of the circumstances. *State v. Hilleshiem*, 291 N.W.2d 314, 316 (Iowa 1980).

For the purposes of our review in this case, the search and seizure clauses of the Iowa and United States Constitutions are substantially identical. *Compare* U.S. Const. amend. IV *with* Iowa Const. art. I, § 8. Where state and federal constitutional clauses embody the same protections we usually deem them to be identical in scope and purpose. *State v. Scott,* 409 N.W.2d 465, 467 (Iowa 1987). We so regard them here.

■ The guarantees of the fourth amendment do not require probable cause for every search or seizure conducted by the government. The essential purpose of the fourth amendment search and seizure proscriptions is to impose a standard of reasonableness on the discretion of government officials in order to safeguard the privacy and security of individuals against arbitrary invasion. *Hilleshiem,* 291 N.W. 2d at 316; *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). These defendants were "seized" within the meaning of the fourth amendment when their trucks were stopped, and the constitutionality of the seizure is determined by balancing the degree of intrusion on the individual against the promotion of legitimate governmental

---

1. We realize a potential conflict appears to exist between Iowa Code section 321.465 which requires reasonable cause to stop and weigh a vehicle and section 321.492 which does not. As we explained in *State v. Scott,* 409 N.W.2d 465, 468 (Iowa 1987), "we equate the 'reason to believe' language of section 321.465 with the 'reasonable cause' test enunciated in *Terry [v. Ohio,*

392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L. Ed.2d 889, 906 (1968) ]." A peace officer on patrol who stops a vehicle to weigh it must have reasonable cause to believe the truck is overweight, regardless of whether section 321.465 or section 321.492 is the state charging provision, because of the state and federal constitutional constraints we outlined in *Scott.*

interests. *Hilleshiem*, 291 N.W.2d at 317; *Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667–68.

The purpose of weight and overload regulations, as stated earlier, is to promote public safety and preserve the state's highways. *Sands*, 280 N.W.2d at 371. Weighed against the importance of these governmental interests, the intrusion on individual vehicle drivers by DOT officers is relatively slight. Of significance in this balance, motor carriers are pervasively regulated by statute in Iowa. *See* Iowa Code §§ 321.452–481. *See generally* Iowa Code chs. 321, 325, 327–327D. Such carriers are, or ought to be, well aware of the state's weight and load regulations. Further, DOT officers' power to intrude on individuals is strictly limited by the Iowa Code to inspecting for registration, weight, size, load and safety violations. Iowa Code §§ 321.476, 321.477, 321.492. The DOT officers who stopped Churchill and Ralston were stopping only commercial trucks over five tons to check vehicle registrations, inspect for safety violations and weigh each vehicle as allowed by statute.

The Kansas Supreme Court was faced with an almost identical situation in *State v. Moore*, 237 Kan. 523, 701 P.2d 684 (1985). The defendants in *Moore* were commercial trash haulers. They were stopped at random at a temporary checkpoint set up outside a landfill by Kansas Department of Revenue officials who were empowered by a state statute worded substantially similar to Iowa Code section 321.-477. Citing with approval the earlier decision of the Kansas Court of Appeals in *State v. Williams*, 8 Kan.App.2d 14, 648 P.2d 1156 (1982), the Kansas court rejected the defendants' suppression motions based upon alleged violations of the fourth amendment.

In *Williams*, the appeals court had allowed a random stop and warrantless search of a commercial driver by a Kansas patrolman pursuant to a Kansas statute requiring commercial drivers to keep travel logs accounting for time spent driving, the purpose being to assure drivers did not spend excessive time driving without rest.

The conclusion of the Kansas appeals court in *Williams*, because of its applicability to our situation, bears repeating here:

> We have before us a factual situation in which a limited number of defined persons ... is authorized to make spot checks of pervasively regulated commercial businesses to insure compliance with regulations furnished to them by the state. The inspector's authority is limited to determining there is compliance with the law and the rules and regulations furnished to and known by the commercial business being inspected.

*Id.* at 22, 648 P.2d at 1162.

Commenting on the same policy issues, the Kansas court in *State v. Moore*, 237 Kan. at —, 701 P.2d at 689 added:

> [M]otor carriers are pervasively regulated and the public has a substantial interest which must be protected. Trucks which transport large cargos present a substantial hazard if not operated in a safe condition. When the driver of a motor carrier operates on a public highway *per se* he does so with the knowledge that his property will be inspected from time to time. *Cf. United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). Such inspections do not violate either the Fourth Amendment to the United States Constitution or Section 15 of the Bill of Rights of the Kansas Constitution.

We believe that *State v. Moore* is directly on point under the facts and relevant statutes in our present case. We agree with the reasoning of the Kansas court as it applies here.

We find further support for our position in the recent decision of the Supreme Court in *New York v. Burger*, 482 U.S. —, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Allowing the warrantless search of an automobile salvage yard, the Court stated:

> This warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a substantial government interest that informs the

regulatory scheme pursuant to which the inspection is made.

. . . .

Second, the warrantless inspection must be necessary to further the regulatory scheme.

. . . .

Finally, ... the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes. In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be carefully limited in time, place and scope.

482 U.S. at ——, 107 S.Ct. at 2643–44, 96 L.Ed.2d at 614 (citations and quotation marks omitted).

■ While the "commercial premises" in this case is mobile and we address the question of a vehicle stop rather than warrantless searches, the reasoning of *Burger* is closely analogous here. We have already explained the important governmental interest in regulating commercial vehicles and the need for temporary checkpoints in furthering the regulatory scheme in Iowa Code section 321.463, satisfying the first two criteria of *Burger*. Satisfying the third criterion, Iowa Code sections 321.476 and 321.477 inform commercial haulers that they are subject to frequent inspections and by whom. Thus, the commercial hauler knows that "the inspections to which he [or she] is subject do not constitute discretionary acts by a government official but are conducted pursuant to statute." *Id.* at ——, 107 S.Ct. at 2648, 96 L.Ed.2d at 619. Further, Iowa Code section 321.463 notifies carriers how to comply with weight regulations. Additionally, the place (on the highways) and the scope of the inspections are explicitly limited as we

have already pointed out. Given the criteria outlined in *Burger*, the stops in this case without reasonable cause were not unreasonable under the fourth amendment.

Finally, defendants argue that we are constrained by our decision in *State v. Hilleshiem*, 291 N.W.2d 314 (Iowa 1980), and the United States Supreme Court's decision in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), to require certain warnings or signals alerting oncoming traffic to the location of every checkpoint. Our decision in *Hilleshiem* distilled the minimum requirements for a vehicle stop without reasonable suspicion from various Supreme Court decisions. *Hilleshiem*, which involved a check of all vehicles leaving a city park after dark to identify drivers, required (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to show the police power of the community; and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria. 291 N.W.2d at 318.

Our *Hilleshiem* opinion drew primarily from *Prouse*, and we read the *Prouse* decision as distinguishing between stops of passenger automobiles and trucks subject to safety and other regulatory inspections. *Accord Williams*, 8 Kan.App.2d at 21, 648 P.2d at 1161. The patrol officer in *Prouse* stopped a passenger vehicle, in the absence of suspicious activity, to check the driver's registration and license. The court's language in division VI of the opinion focused upon the importance of automobile travel in daily life in finding the stop unreasonable. *Prouse*, 440 U.S. at 662–63, 99 S.Ct. at 1400, 59 L.Ed.2d at 672–74. In a footnote, however, the court noted the continued reasonableness of "roadside truck weigh-stations." *Id.* Additionally, *Hilleshiem* involved a police checkpoint operated after dark at the entrance to a park at which passenger cars were stopped for the

purpose of ascertaining the identity of the drivers. This is a factually distinct situation from the present one involving heavily regulated commercial vehicles stopped during daylight hours.

These stops did involve an element of surprise to the truck drivers. However, several of the *Hilleshiem* criteria were satisfied. The roadblock location was a safe one. The stops were made in the daylight by uniformed officers and official vehicles were visible to the truck drivers. The DOT officers were stopping only commercial vehicles over five tons in weight to exercise their limited authority under Iowa Code section 321.476 to weigh and inspect regulated carriers concerning registration, weight and load of their trucks. Although the checkpoint at which the defendants here were stopped did not meet all of the requirements of *Hilleshiem,* we conclude that the requirements of *Hilleshiem* are not controlling in this factual and legal context because these stops were reasonable and, therefore, did not violate the fourth amendment. We conclude the court properly overruled defendants' motions to suppress.

We defer until a later time decisions concerning validity of stops that may occur in other factual and legal contexts than the ones present here.

IV. *Disposition.* Nothing we have said today impairs the vitality of *Hilleshiem* in other contexts. We hold only that DOT officers empowered by Iowa Code section 321.477, and acting pursuant to the limited authority and purposes granted to them in section 321.476, act within the bounds of constitutional reasonableness when they randomly stop commercial vehicles at temporary checkpoints during daylight hours although the checkpoints do not satisfy all of the *Hilleshiem* requirements. The decisions of the trial court overruling defendants' motions to suppress and the defendants' convictions are affirmed.

AFFIRMED.