# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1169

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Northern |
| Michael James Knight, | * | District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2002

Filed: October 1, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Trooper Don McGlaughlin stopped Michael Knight's truck for having a radar detector, the officer began a so-called North American Standard Level III inspection. *See* Commercial Vehicle Safety Alliance, *Truck Inspection Program, North American Standard Level III Driver-Only Inspection Procedure* (1996); *see also* 49 C.F.R. § 350.115. A short while into that inspection, he asked permission to search Mr. Knight's briefcase, but Mr. Knight refused. Trooper McGlaughlin nonetheless searched the briefcase and discovered a handgun. When further investigation revealed that Mr. Knight was a felon, he was indicted by a grand jury

on a charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Mr. Knight moved to suppress the evidence discovered in his briefcase on the ground that Trooper McGlaughlin exceeded the scope of the regulatory search authorized by law and thus violated his fourth amendment rights in seizing the briefcase. After the district court denied Mr. Knight's motion, he entered a conditional guilty plea under Fed. R. Crim. P. 11(a)(2) and appealed. We reverse the district court's denial of the motion to suppress and remand for further proceedings.

I.

In *New York v. Burger*, 482 U.S. 691, 702-03 (1987), the Supreme Court held a warrantless search of closely regulated industries is constitutional if, *inter alia*, the rules governing the search offer an adequate substitute for the fourth amendment warrant requirement. In order to do that, the rules must do two things: they must provide notice to owners that their property may be searched for a specific purpose, and they "must limit the discretion of the inspecting officers." *Id.* at 703. We agree with the district court's conclusion that the North American Standard Inspection Program, *see* 49 C.F.R. § 350.105, which was in force in Iowa, and pursuant to which the inspection here was commenced, provides notice to truck drivers of the possibility of a roadside inspection and limits officer discretion. The question before us, however, is whether Trooper McGlaughlin's search of the defendant's briefcase was in compliance with the North American Standard Inspection Program. We believe that it was not.

As an initial matter, we note that Trooper McGlaughlin informed Mr. Knight that he was going to conduct a so-called Level III, driver-only inspection. The regulatory guidelines for such an inspection authorize an officer to "[c]ollect the following documents: driver's license; medical examiner's certificate (and waiver, if applicable); records of duty status; driver's daily vehicle inspection report;

documentation of periodic inspections; shipping papers and/or bills of lading, and receipts or other documents that may be used to verify the log." *North American Standard Level III Driver-Only Inspection Procedure*, *supra*; *see* 49 C.F.R. § 350.105. The guidelines also authorize an officer to "[c]heck the cab for possible illegal presence of alcohol, drugs, weapons or other contraband." *North American Standard Level III Driver-Only Inspection Procedure*, *supra*; *see* 49 C.F.R. § 350.105. The relevant guidelines, however, do not permit the search of personal belongings, and we believe that they could not constitutionally do so, because in the context they would not sufficiently limit officer discretion as *Burger* requires. *See Burger*, 483 U.S. at 702-03. In any event, Trooper McGlaughlin's search of Mr. Knight's briefcase quite obviously exceeded the authority vested in him by the North American Standard Inspection Program, and thus it exceeded the scope of a constitutionally permissible regulatory search.

The government argues, however, that the Supreme Court has held that an officer who has the authority to search a vehicle may search all containers in it that are capable of concealing the object of the search. *See Wyoming v. Houghton*, 526 U.S. 295, 302 (1999); *see also United States v. Ross*, 456 U.S. 798, 820-21 (1982) . It maintains that since the North American Standard Inspection Program authorized an officer to "[c]heck the cab," it follows that the officer was permitted to search all containers in the vehicle capable of concealing the object of the search. A briefcase is certainly capable of concealing papers, contraband, or weapons; hence, the argument runs, Trooper McGlaughlin's search of the briefcase was justified.

We believe, however, that the Supreme Court has held that an officer may search all containers in a vehicle capable of concealing the object of the search only when he or she has probable cause to search the vehicle. *See generally Houghton*, 526 U.S. 295; *Ross*, 456 U.S. 798; *see also United States v. Sample*, 136 F.3d 562, 564 (8th Cir. 1998). The rationale for this rule is that the probable cause that justifies the search of a vehicle also justifies the search of the containers within the vehicle

that could conceal the object of the search. *See Ross*, 456 U.S. at 824. For example, if suspicion of contraband justifies searching a lawfully stopped vehicle then that very same suspicion justifies searching a container in the vehicle that is capable of containing contraband. But in the case at bar, the trooper's authority to search Mr. Knight's truck was based not on probable cause, but on a regulatory statute. The regulatory statute serves the function of a warrant because it explicitly limits the "time, place, and scope" of the authorized search as the fourth amendment requires, *Burger*, 483 U.S. at 703 (internal quotations omitted), but it does not provide probable cause. Since Trooper McGlaughlin did not have probable cause to search Mr. Knight's truck, we cannot hold, as a matter of law, that Trooper McGlaughlin had probable cause to search Mr. Knight's briefcase.

Nor do we find convincing the government's alternative argument that Trooper McGlaughlin in fact had probable cause to search Mr. Knight's briefcase. The government asserts that the fact that the briefcase was sitting at a 45-degree angle on a pile of clothes behind the driver's seat of the cab gave rise to an inference that Mr. Knight had moved the briefcase after Trooper McGlaughlin had stopped the truck. This, they contend, raised the further inference that the briefcase contained something illegal or, at the very least, evidence of a legal violation. We believe, however, that these inferences are too weak to support a finding of probable cause. In other words, we do not believe that an "objectively reasonable police officer," *Ornelas v. United States*, 517 U.S. 690, 696 (1996), could infer from the position of the briefcase alone that there was a "fair probability" that it contained anything illegal or evidence of illegal activity, *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The government also points out that Mr. Knight's log inaccurately reported his stops for fuel as off-duty activity and that, contrary to regulations, the log did not reveal what the truck was carrying. But we fail to see how these facts in any way imply that Mr. Knight's briefcase contained documents that would confirm a

falsification of the log books, especially considering that there is no evidence suggesting that inaccuracies in the log were attempts at fraud, as opposed to honest mistakes and omissions. As Judge Murphy notes in her dissent, Trooper McGlaughlin testified that his suspicions were aroused when Mr. Knight said that he did not have any toll or fuel receipts, but the magistrate judge did not find as a fact that Mr. Knight made such a statement. Even if we were inclined to think (and we are not) that if we added that statement to the factual mix the trooper would have had probable cause to search the briefcase, we cannot simply accept the government's testimony as true on a matter that the defendant has not admitted. We therefore think that the trooper's alleged question and Mr. Knight's alleged answer to it are not matters that are properly before us for our consideration.

If the defendant had made suspicious or false statements in response to inquiries about the briefcase, or if Trooper McGlaughlin had observed the defendant moving the briefcase, then there might have been probable cause to search it. But the record is devoid of any such evidence. In short, on this record Trooper McGlaughlin would have been justified, in our judgment, in concluding that Mr. Knight had improper documents and therefore was in violation of regulations concerning motor safety; but the officer had no reasonable basis for searching Mr. Knight's personal belongings.

We observe, finally, that the Supreme Court has warned against administrative stops becoming pretexts for "crime control," *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000). We believe that, as a general matter, rummaging through a person's belongings is more likely to serve the purpose of "crime control" than the enforcement of a regulatory scheme. Such a search is, in our judgment, justified only if it is explicitly authorized by a valid warrant or if it is supported by probable cause. Because Trooper McGlaughlin's search was neither authorized by warrant nor supported by probable cause, it violated the defendant's fourth amendment rights.

II.

For the reasons discussed, we reverse the district court's decision to deny the motion to suppress and remand to the court for further proceedings not inconsistent with this opinion.

MURPHY, Circuit Judge, dissenting.

I respectfully dissent because the district court did not err by admitting evidence that Michael Knight, a convicted felon,[1] had a loaded .380 handgun next to him when he was stopped on an interstate highway for a traffic violation.[2] Trooper Don McGlaughlin was authorized to conduct a Level III safety inspection of Knight's truck, and what he learned during the course of that inspection gave him reason to believe that a briefcase he saw by the driver seat contained evidence that Knight was driving in violation of safety laws. He therefore did not exceed the permissible scope of a regulatory search of a commercial motor vehicle by asking him to open the briefcase and unexpectedly finding a loaded gun.

Trooper McGlaughlin is a 31 year veteran of the Iowa State Patrol and belongs to a unit specially trained to conduct Level III inspections. An officer performing this type of inspection is authorized to collect documents to check whether a truck is properly registered and in good working order, whether the driver has proper shipping papers and bills of lading for his load, and whether the driver keeps an accurate daily log. The daily log has a safety purpose and is used to check whether a driver is

---

[1]Knight had three prior felonies: a 1991 conviction for conspiracy to commit murder in the first degree, and 1985 convictions for use of a .45 caliber pistol to commit a second degree assault and for intentionally or knowingly causing bodily injury.

[2]Use of a radar detector in a commercial motor vehicle, in violation of Federal Motor Carrier Safety Administration regulations and Iowa law. See 49 C.F.R. § 392.71(a); Iowa Code § 321.449; Iowa Administrative Code § 761-520.1(1)(a).

abiding by federally mandated rules limiting the number of hours a driver can operate a commercial motor vehicle without rest. See 49 C.F.R. § 395.1-15. McGlaughlin conducts approximately 300 such inspections each year, and his experience and training have taught him how truckers keep track of their fuel receipts and documents and how some of them evade federal safety regulations.

The safety regulations are extensive and cover all commercial motor vehicles, which are defined as vehicles weighting 10,001 pounds or more. See 49 C.F.R. § 350.105. Commercial truck drivers may only drive seventy hours in any eight day period, and they must take an eight hour break after being on duty for fifteen hours. See Id. § 395.3(a)(1)-(2). After eight consecutive hours off duty, a driver can return to the road and drive up to ten hours. Every driver is required to record his duty status for each twenty four hour period in accordance with federal regulations. See Id. § 395.8. If a driver has exceeded the maximum hours permitted or fails to have a current record showing his duty status, the driver can be taken out of service for the requisite rest period. See Id. § 395.13. If a driver presents a false log during a Level III inspection, he is to be taken out of service for eight consecutive hours. See Commercial Vehicle Safety Alliance, North American Standard Level III Driver-Only Inspection Procedure, Appendix A, Part I: Northern American Standard Driver Out-of-Service Criteria (1996), see also 49 C.F.R. § 350.105. McGlaughlin testified that the Iowa State Patrol policy requires that a trooper obtain at least two documents showing a logbook has been falsified before taking a driver out of service.

When McGlaughin approached Knight's truck, he saw that the passenger door had already been opened for him and he climbed up onto the step of the cab to talk with Knight. From this vantage point McGlaughlin had a clear view into the cab, and Knight told him he was familiar with a Level III inspection from past experience. Soon after McGlaughlin began his inspection, he noticed several irregularities in Knight's logbook. He observed that Knight had designated a fuel stop in North Platte, Nebraska as off duty time even though the regulations require that fuel stops be

recorded as on duty time. See 49 C.F.R. § 395.2. McGlaughlin also noticed that Knight's logbook showed several stops in the preceding hours. Based on his experience with commercial trucking, McGlaughlin knew that it would be unusual for a driver to make so many short stops. McGlaughlin also saw that Knight had logged much off duty time in the past few days and that he had failed to put the lading and trip numbers in the "Remarks" section of his logbook as required by the regulations. See Id. § 395.8(d)(11). These irregularities in the logbook suggested to McGlaughlin that Knight was lying about his off duty time and could be in violation of federal safety laws.

As part of the Level III inspection, a driver is expected to provide receipts and other documents that may be used to verify the driver's logbook. See North American Standard Level III Driver-Only Inspection Procedure, supra; see also 49 C.F.R. § 350.105. McGlaughlin testified that when he asked if Knight had any fuel or toll receipts, he said he did not. This caused McGlaughlin to suspect that Knight was concealing documents that would reveal his actual driving pattern over the preceding days. A driver without sufficient rest presents a safety hazard on the highway, and he and his vehicle can be pulled out of service. See 49 C.F.R. § 395.13. In order to take a driver and his shipment off the road for inaccuracies in a logbook, an officer needs to ascertain that there are false entries relevant to whether the driver can safely continue to operate his truck on that day. See North American Standard Level III Driver-Only Inspection Procedure, supra; see also 49 C.F.R. § 350.105. McGlaughlin testified at the hearing before the magistrate judge that truckers often conceal an alternate logbook, receipts, and other supporting documents such as toll booth tickets within the cab of the truck.[3]

---

[3]McGlaughlin was the only witness at the hearing where he was cross examined by defense counsel. Before recommending that the motion to suppress be denied, the magistrate judge found that McGlaughlin wanted to see receipts and other papers in order to test the validity of the log.

At this point McGlaughlin noticed a briefcase just behind the driver seat, lying on top of a pile of dirty clothes at a 45 degree angle to Knight's seat. It appeared to McGlaughlin that the briefcase could not have remained in such a position without falling off the clothes pile if the truck had been moving. He reasonably concluded that Knight must have pulled the briefcase from the passenger seat when he was ordered to pull over. McGlaughlin testified that he had learned from his experience that truck drivers often use briefcases for their records and often keep them on the passenger seat, and the magistrate judge found that truckers "most commonly keep them on the passenger's seat". Because the briefcase appeared to have been moved into its unusual position behind Knight's seat after the truck came to a stop, McGlaughlin suspected that it contained incriminating documents.

The majority states that it was not objectively reasonable for the trooper "to infer from the position of the briefcase *alone* that there was a 'fair probability' that it contained anything illegal or evidence of illegal activity," (emphasis added). The record shows, however, that there was additional evidence to lead an objectively reasonable officer to such an inference. Knight had irregularities in his logbook, was evasive during the inspection, and could not produce receipts or other relevant documents. This created a reasonable suspicion in McGlaughlin's mind that Knight was violating safety laws. If records were to substantiate the suspicion that Knight was driving without the required rest period, he could be pulled off the highway as a safety hazard. McGlaughlin knew that truck drivers often keep receipts in briefcases, and the peculiar position of Knight's briefcase suggested that he had moved it to avoid attention to it. McGlaughlin assumed incorrectly, but not unreasonably, that that was because Knight was concealing requested documents in it. At the point at which McGlaughlin asked to search the briefcase, there was more than a "fair probability" that it contained evidence of illegal activity.

In New York v. Burger, 482 U.S. 691 (1987), the Supreme Court recognized a diminished expectation of privacy in closely regulated industries. Because of this,

"the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application…." Id. at 702 (citation omitted). Commercial trucking is a closely regulated industry subject to regulatory searches, see United States v. Fort, 248 F.3d 475, 480 (5th Cir. 2001); United States v. Burch, 153 F.3d 1140, 1141-42 (10th Cir. 1998); United States v. Dominguez-Prieto, 923 F.2d 464, 468 (6th Cir. 1991), and commercial truck drivers are aware that the regulatory scheme lessens expectations of privacy in their driving schedule and in their related records. See 49 C.F.R. § 395.8. After Knight was found to have violated some regulations and after he failed to produce receipts to clarify apparent irregularities in his logbook, his reasonable expectation of privacy in the contents of the briefcase was diminished. See U.S. v. Biswell, 406 U.S. 311 (1972); U.S. v. Seslar, 996 F.2d 1058, 1061 (10th Cir. 1993) ("persons doing business in closely regulated industries have a significantly reduced expectation of privacy"); State v. A-1 Disposal, 415 N.W.2d 595, 599 (Ia. 1987) ("When the driver of a motor carrier operates on a public highway *per se* he does so with the knowledge that his property will be inspected from time to time.").

The "principal components of a determination of reasonable suspicion or probable cause [are] the events which occurred leading up to the … search…." Ornelas v. United States, 517 U.S. 690, 696 (1996). Here, there were a number of suspicious facts from which an objectively reasonable highway patrol officer could infer that the briefcase contained evidence of illegal activity. McGlaughlin had reason to focus on it so I respectfully disagree with the suggestion that he was rummaging through Knight's personal belongings. The constitutionality of a regulatory search is tested by balancing "the need to search against the invasion which the search entails." Camara v. Municipal Court, 387 U.S. 523, 537 (1967). As a commercial truck driver, Knight had less expectation of privacy in respect to his vehicle, his records, and his route than the average driver. The search of his closed briefcase must be balanced against the interest of the public in highway safety and Trooper McGlaughlin's reasonable suspicion that Knight was driving in violation of

-10-

safety laws and that substantiating evidence would be located in the briefcase. I would therefore affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.