# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2321

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Jose Mendoza-Gonzalez, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: March 9, 2004

Filed: April 13, 2004

_____

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jose Mendoza-Gonzalez was convicted by a jury of conspiracy to distribute methamphetamine and marijuana, possession of methamphetamine with intent to distribute, and possession of marijuana with intent to distribute. The district court[1]

---

[1]The Honorable Ronald E. Longstaff, Chief Judge for the United States District Court for the Southern District of Iowa.

sentenced Mendoza-Gonzalez to 235 months imprisonment, and he appeals.[2]  We affirm.

On February 5, 2002 Mendoza-Gonzalez was driving his semitractor in Iowa on eastbound Interstate 80 when he came to the Dallas County weigh station for trucks.  He pulled into the station where Officer Kenneth Burke was on duty.  Officer Burke is an Iowa Department of Transportation officer, and he noticed that the truck was not displaying the required DOT and ICC numbers or Iowa fuel tax sticker.  He approached the truck and asked Mendoza-Gonzalez to bring his logbook, permits, and other paperwork into the weigh station office.  Examination of the logbook revealed that Mendoza-Gonzalez had failed to retain the previous seven days of the log as required under 49 C.F.R. § 395.8.  He was also unable to produce an Iowa trip permit.

Officer Burke decided to conduct a North American Standard Level II inspection of Mendoza-Gonzalez and his truck.  See Commercial Vehicle Safety Alliance, Truck Inspection Program, North American Standard Level II Walk-Around Driver/Vehicle Inspection Procedure (2004), available at http://www.cvsa.org/programs/inspection_levels.html; see also 49 C.F.R. § 350.105. Burke has been certified by the Federal Motor Carrier Safety Administration to perform inspections, and he later testified that there are three levels of inspection to which trucks are routinely subjected at weigh stations.  A level III Driver/Credential Inspection involves examination of the paperwork associated with the truck, the driver's license, registration, logbook, and permits.  A Level II Walk-Around Driver/Vehicle Inspection is inclusive of the Level III inspection, but the officer also inspects all safety equipment that can be examined without physically getting under the vehicle, such as lights, tires, emergency equipment, and safety belts.  A Level I

_____

[2]Mendoza-Gonzalez also was convicted by a plea of guilty to one count of illegal reentry which is not involved in his appeal (he reentered the country after having been deported following a robbery conviction).

North American Standard inspection is inclusive of the Level II and III inspections, but also includes an examination of equipment that can only be checked from underneath the truck, such as the brake cables and exhaust system. Officer Burke testified at the suppression hearing that officers at weigh stations generally perform a Level I or Level II inspection unless extremely inclement weather makes only a Level III inspection of the driver and paperwork practical. The weather conditions were not extreme at the time Mendoza-Gonzalez's truck was inspected.

Officer Burke testified that as he walked with Mendoza-Gonzalez from the weigh station back to the truck to perform the Level II inspection, he asked him whether there was anyone else in the truck or any prohibited items, such as weapons, narcotics, alcohol, or radar detectors. Mendoza-Gonzalez replied that his brother was inside but that there were none of the items Burke had mentioned. Burke testified that he routinely requests a driver's consent to search his truck because consent permits an officer to go beyond the standard inspection and to look inside the driver's personal belongings for illegal items such as radar detectors or weapons. He testified that he asked whether Mendoza-Gonzalez would mind if he searched the truck. Mendoza-Gonzalez responded "yes" and "I have nothing to hide." Mendoza-Gonzalez testified differently. He said Officer Burke never asked if he could search the truck and that he specifically told Burke not to enter the cab because his brother was resting in the sleeper berth. Officer Burke testified that after their conversation Mendoza-Gonzalez summoned his brother out of the truck, and he commenced the inspection.

Officer Burke testified that immediately upon entering the truck he detected strong odors of marijuana and dryer sheets. In his prior position with the Madison County Sheriff Department where he worked in drug interdiction, Burke had learned that dryer sheets were frequently used by drug traffickers to mask the smell of marijuana. Because of the odors in the truck, he suspected that it either currently or recently contained marijuana. Proceeding with the Level II inspection, Officer Burke

checked the sleeper area to make sure that it contained a mattress, bed linens, safety equipment, and occupant restraints as required by 49 C.F.R. § 393.76. Upon initial inspection he was unable to see any occupant restraint on top of the mattress. He lifted the mattress to see if the restraint was underneath, but he still could not find it. Burke testified that in his experience restraints sometimes slip down into the storage box under the mattress. He lifted the lid of the box to look for the restraints and saw a package about the size of a shoe box, wrapped in what appeared to be dryer sheets and clear cellophane. Officer Burke testified that based upon his training and experience he believed that the package contained marijuana.

Officer Burke took Mendoza-Gonzalez and his brother into the weigh station building. He explained to them that he had seen a suspicious package during his inspection and that he was going to investigate further. He did not arrest the brothers at that time, but he placed them both in handcuffs and returned to the truck. At this point no one had advised them of their rights under Miranda v. Arizona, 384 U.S. 436, 444 (1966). Officer Ron Caudle, who was unaware of what Burke had seen in the truck, was inside the weigh station where the brothers waited. After speaking with his brother in Spanish, Mendoza-Gonzalez asked Caudle if he could place a phone call. Officer Caudle asked why, and Mendoza-Gonzalez responded, "I am going to jail." The district court[3] suppressed the remainder of the interchange.[4]

When Officer Burke returned to the truck he found that the cab now smelled much more strongly of marijuana. He reopened the storage compartment under the

[3]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa, conducted the suppression hearing and ruled on the motion to suppress.

[4]Following Mendoza-Gonzalez's statement that he was "going to jail," Officer Caudle asked, "You are going to jail? Then you know what's out in the truck?" Mendoza-Gonzalez replied, "250." Officer Caudle then asked, "250 marijuana?" Mendoza-Gonzalez replied, "250 pounds of marijuana."

-4-

mattress and noticed what appeared to be black plastic bags lining the area under the package he had seen earlier. He pulled the bags aside and saw that there were 15 to 20 packages similar to the first one. Suspecting that the packages contained marijuana, Burke placed Mendoza-Gonzalez and his brother under arrest and contacted the Iowa Division of Narcotics Enforcement. A total of nineteen packages were in the truck. They contained 122.619 kilograms of marijuana and 445.2 grams of 57% pure methamphetamine. The packages were examined for latent fingerprints, and the wrappings were found to contain a palm print matching that of Mendoza-Gonzalez, along with prints of several unknown persons.

Several witnesses testified against Mendoza-Gonzalez at trial. His brother testified that he had first learned about the drugs when Mendoza-Gonzalez told him at the weigh station that there were 300 pounds of marijuana and six pounds of "crystal" in the truck.[5] A jailhouse informant, Ricky Carmichael, testified that Mendoza-Gonzalez had told him that he had been taking 335 pounds of marijuana and two pounds of methamphetamine from California to Minnesota when he was arrested. Mendoza-Gonzalez had also said that the drugs were wrapped in plastic and dryer sheets and were hidden under the sleeper berth in the truck. According to Carmichael, Mendoza-Gonzalez stated that he was unconcerned about fingerprints, because he believed the drugs were wrapped too tightly in plastic to contain any usable prints. The jury also heard Mendoza-Gonzalez's incriminating statement in the weigh station that he was "going to jail."

Mendoza-Gonzalez was found guilty of all charges presented to the jury. At sentencing the court found Mendoza-Gonzalez responsible for 122.169 kilograms of marijuana and 253.77 grams of actual methamphetamine with a marijuana

---

[5]Officers testified at trial that the highly pure methamphetamine seized from the truck would likely be diluted with a cutting agent to produce more than five pounds of methamphetamine for distribution.

equivalency of 5075.4 kilograms. A total marijuana equivalency of 5198 kilograms was attributed to Mendoza-Gonzalez, and this led to a base offense level of 34 under U.S.S.G. § 2D1.1 (2002). The district court applied a two level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, after finding that Mendoza-Gonzalez had committed perjury at his suppression hearing. His illegal reentry conviction was disregarded for purposes of sentencing because the total offense level for that charge was more than nine levels lower than his total offense level for the drug charges. See U.S.S.G. § 3D1.4. His total offense level of 36, combined with his Criminal History Category of III, produced a sentencing range of 235 to 293 months. The district court sentenced Mendoza-Gonzalez at the low end of the range to 235 months.

Mendoza-Gonzalez claims that the district court erred by not suppressing the evidence found in the truck and his statement that he was "going to jail." He also argues that there was insufficient evidence to sustain his convictions for conspiracy and for possession with intent to distribute and that the district court erred by imposing an enhancement for obstruction of justice.[6] We address each argument in turn.

Mendoza-Gonzalez claims that his Fourth Amendment rights were violated by the inspection of the compartment under the sleeper mattress in his truck. We review the district court's findings of fact for clear error and its denial of a motion to suppress de novo. United States v. Payne, 119 F.3d 637, 641 (8th Cir. 1997).

---

[6]Mendoza-Gonzalez also claims that he did not receive effective assistance of counsel at trial. Such claims should generally be raised in collateral proceedings rather than on direct appeal because they typically involve facts outside the record. United States v. Woods, 270 F.3d 728, 730 (8th Cir. 2001), citing United States v. Martin, 59 F.3d 767, 771 (8th Cir. 1995). Mendoza-Gonzalez did not raise the claimed deficiencies before the district court, and the record is undeveloped in respect to them. We therefore dismiss this claim without prejudice.

In New York v. Burger, 482 U.S. 691, 702-04 (1987), the Supreme Court held that a warrantless search of property in certain closely regulated industries is constitutional if the rules governing the search offer an adequate substitute for the Fourth Amendment warrant requirement. The rules must provide notice that property may be searched for a specific purpose and must limit the discretion of the inspecting officers. Id. at 703-04. Commercial trucking is a closely regulated industry within the meaning of Burger. See United States v. Knight, 306 F.3d 534, 535 (8th Cir. 2002). Accord United States v. Vasquez-Castillo, 258 F.3d 1207, 1210 (10th Cir. 2001); United States v. Fort, 248 F.3d 475, 480-82 (5th Cir. 2001); United States v. Dominguez-Prieto, 923 F.2d 464, 468-70 (6th Cir. 1991). The North American Standard Inspection Program for commercial vehicles also adequately limits officer discretion and provides notice to truckers of the possibility of a roadside inspection. See Knight, 306 F.3d at 535. As the cited cases show, probable cause was not needed to subject Mendoza-Gonzalez's truck to a Level II inspection. At issue in this case is whether it was permissible for Officer Burke to open the compartment beneath the sleeper mattress in the course of his Level II inspection.

One requirement for a Level II inspection is that the officer inspect all safety belts. See North American Standard Level II Walk-Around Driver/Vehicle Inspection Procedure, supra. Federal regulations require that there be safety belts to restrain occupants of the sleeper berth. See 49 C.F.R. § 393.76. Judge Pratt found credible Officer Burke's testimony that he was unable to see the required safety belts on top of the mattress or directly underneath it. The court heard and accepted Burke's testimony that, in his experience, safety belts sometimes fall into the storage compartments beneath the mattress and that he opened the compartment to look for the restraints as part of the standard Level II inspection. The district court rejected as not credible Mendoza-Gonzalez's contrary testimony that the layout of the sleeper berth made it impossible for the occupant restraints to fall into the storage compartments. The court commented that Mendoza-Gonzalez appeared to be "making it up as he went along."

The district court is in the best position to judge the credibility of witnesses who testify before it, United States v. Newson, 46 F.3d 730, 734 (8th Cir. 1995), and no other evidence in the record undercuts its finding that Officer Burke opened the compartment to look for the safety restraints as part of his Level II inspection. Opening the storage compartment was the only way for Burke to ascertain whether the sleeper berth was equipped with the federally mandated occupant restraints as required under the Level II inspection procedures. The district court therefore did not err in finding that Officer Burke discovered the suspicious packages in the course of a valid regulatory inspection.

The district court also found that Mendoza-Gonzalez had voluntarily consented to the search of his truck. It found credible Officer Burke's testimony that Mendoza-Gonzalez said "yes" and that he had "nothing to hide" when asked whether he would mind if Burke searched the truck, and it specifically rejected Mendoza-Gonzalez's contrary testimony as not credible. The court considered the relevant factors identified in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990), and found that Mendoza-Gonzalez had not appeared to be under the influence of drugs or alcohol, that he conversed in English with Officer Burke for several minutes without apparent misunderstanding, and that he did not object when Burke began to inspect the truck. It further found that Mendoza-Gonzalez was not detained prior to being asked if he consented to the search, that Burke's request took place in a public area, and that no coercion or inappropriate tactics were used. These factors weigh in favor of the district court's finding of voluntariness, see id., and we see no error in its finding that Mendoza-Gonzalez voluntarily consented to the search of his truck.[7]

---

[7]Because of these determinations it is not necessary to consider the district court's alternate holding that Officer Burke had probable cause to search the truck and that the automobile exception to the warrant requirement also applied.

In sum, we hold that Officer Burke did not violate Mendoza-Gonzalez's Fourth Amendment rights by opening the storage compartment under the sleeper berth in which he found large quantities of illegal drugs. He was entitled to inspect the compartment for occupant restraints during his Level II inspection, and we also see no error in the district court's finding that Mendoza-Gonzalez voluntarily consented to a search of his truck. We conclude that the district court did not err in denying the motion to suppress.

Mendoza-Gonzalez also contends that his statement to Officer Caudle that he was "going to jail" should have been suppressed. As noted above, we review the district court's factual findings for clear error and its denial of a motion to suppress de novo. Payne, 119 F.3d at 641. Unless a person in custody has been advised that he has the right to remain silent, that any statement he makes can be used as evidence against him, and that he has a right to an attorney, statements made in response to interrogation must generally be suppressed. Miranda, 384 U.S. at 444. It is undisputed here that Mendoza-Gonzalez was in custody and that no officer had yet advised him of his rights at the time he made the statement that he was "going to jail." The issue is whether his statement was the result of police interrogation.

Interrogation includes not only express questioning by law enforcement officers, but also words or actions that officers should know are reasonably likely to elicit an incriminating response from a suspect. Rhode Island v. Innis, 446 U.S. 291, 301 (1980). In this case Mendoza-Gonzalez told Officer Caudle that he needed to make a phone call. Officer Caudle simply asked why. At that time he did not know why Mendoza-Gonzalez and his brother were being detained or that Burke had seen a suspicious package during his inspection of the truck. Burke had just asked him to watch the brothers while he "figured out what was in the vehicle." We agree with the district court that Caudle could not reasonably have expected Mendoza-Gonzalez to make an incriminating statement in response to simply being asked why he wanted to use the phone. There is a clear contrast between this initial question and the

subsequent questioning after Mendoza-Gonzalez said that he was "going to jail." The district court did not err in denying the motion to suppress Mendoza-Gonzalez's statement that he was going to jail.

Mendoza-Gonzalez asserts that there was insufficient evidence for the jury to convict him of possession of marijuana and methamphetamine with intent to distribute or of conspiracy to distribute methamphetamine and marijuana. In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003).

Ample evidence was presented from which a reasonable jury could infer that Mendoza-Gonzalez possessed the drugs with the intent to distribute marijuana and methamphetamine. In order to prove possession with intent to distribute, the government must prove that the defendant had knowing possession of the drugs and the intent to distribute them. The element of knowing possession is satisfied by proof of constructive possession which requires ownership, dominion, or control over the contraband or dominion over the premises in which it is concealed. United States v. Sanchez, 252 F.3d 968, 972 (8th Cir. 2001). Mendoza-Gonzalez had control over the truck in which the drugs were concealed, and his palm print was found on one of the bundles of marijuana. His brother and a jailhouse informant both testified that Mendoza-Gonzalez made statements showing that he knew about the drugs and had been taking them to Minnesota when he stopped at the weigh station. The manner in which the drugs were packaged, the fact that Mendoza-Gonzalez was driving them cross country, and the sheer quantities of drugs seized, see United States v. Brett, 872 F.2d 1365, 1370 (8th Cir. 1989), as well as the purity level of the methamphetamine, gave rise to a reasonable inference that Mendoza-Gonzalez possessed the drugs not for his personal use, but with the intent to distribute.

There was also sufficient evidence for a reasonable jury to conclude that Mendoza-Gonzalez conspired with others to distribute marijuana and methamphetamine. Our cases have sustained conspiracy convictions when all conspirators other than the defendant were unknown so long as the government has produced evidence supporting a reasonable inference of conspiracy. See United States v. Nelson, 165 F.3d 1180, 1184 (8th Cir. 1999). In this case the jury could have inferred the existence of a conspiracy and of coconspirators from fingerprints on the drug packaging that did not belong to Mendoza-Gonzalez or his brother. The jury could have found it unlikely that Mendoza-Gonzalez grew, processed, packaged, and loaded such large amounts of marijuana and highly pure methamphetamine without assistance from any other person or that the drugs were intended for individual users rather than for distribution by coconspirators. The jury was also entitled to consider the evidence that he was driving a truck loaded with large amounts of drugs cross country to reach a destination in Minnesota. See United States v. Mosquera, 779 F.2d 628, 630 (11th Cir. 1986) (jury could reasonably infer that carrier of large quantity of drugs conspired with unknown distributor). The jury could reasonably have inferred from the evidence that an agreement existed between Mendoza-Gonzalez and other persons to distribute marijuana and methamphetamine.

Mendoza-Gonzalez next contends that the district court erred in applying a two level sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We review a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the guidelines de novo. United States v. Esparza, 291 F.3d 1052, 1054 (8th Cir. 2002). A defendant is subject to an enhancement under U.S.S.G. § 3C1.1 if he testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake. Id. at 1055, citing United States v. Chadwick, 44 F.3d 713, 715 (8th Cir. 1995). If a defendant objects to an obstruction enhancement relying on perjury, the district court must make findings that the defendant willfully gave false testimony concerning material matters in the case. Esparza, 291 F.3d at 1055.

Here, Chief Judge Longstaff examined the transcripts of the suppression hearing in light of the evidence he personally heard at the trial and found that Mendoza-Gonzalez willfully gave false testimony concerning material matters in the case. Mendoza-Gonzalez testified at the suppression hearing that his truck displayed the required DOT and ICC numbers. The district court found that this was false based on photographs of the truck which showed these numbers were nowhere to be seen. Mendoza-Gonzalez also testified at the suppression hearing that a screen or net restrained passengers in the sleeper berth, but the district court found that this was false based on Officer Burke's credible testimony and on photographs of the sleeper berth. Mendoza-Gonzalez testified that he never consented to the search of the truck, but Judge Pratt specifically found that Officer Burke's contrary testimony was credible. Mendoza-Gonzalez testified that he had no knowledge of the 122 kilograms of marijuana found in his truck, but the district court found this false based on the presence of his palm print on the packaging and the testimony of two witnesses. There was no clear error in the district court's finding that Mendoza-Gonzalez perjured himself, and the obstruction of justice enhancement was appropriate.

Accordingly, we affirm the judgment of the district court and dismiss as premature the ineffective assistance of counsel claim.

_____

-12-