COMMONWEALTH *vs.* WAYNE D. LEBOEUF, JR.

No. 09-P-1529.

Middlesex. June 15, 2010. - October 8, 2010.

Present: DUFFLY, BROWN, & VUONO, JJ.

*Search and Seizure,* Administrative inspection, Motor vehicle. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to suppress.

This court concluded that a police officer's request to inspect the defendant's license to operate a motor vehicle during a random stop of a commercial motor vehicle for the purpose of conducting a warrantless administrative safety inspection was not unreasonable under the Fourth Amendment to the United States Constitution, where the Commonwealth has a substantial interest in regulation of the trucking industry, and where the statute and regulatory scheme pursuant to which the warrantless inspection was performed provide an adequate substitute for a warrant, in that the regulations limit who may perform inspections, which vehicles may be inspected, when such vehicles may be inspected, and what items may be inspected. [48-52]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on March 10, 2009.

The case was reported by *Douglas W. Stoddart,* J.

*Francis M. Doran, Jr.,* for the defendant.

*Stephen M. Gilpatric,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. The case was reported to us by a judge of the District Court, pursuant to Mass.R.Crim.P. 34, as amended, 442 Mass. 1501 (2004).[1] The question of law to be decided is whether the request to inspect the defendant's motor vehicle operator's

---

[1] This case comes to us in an unusual posture. The case was reported without findings of fact by the motion judge; the record does not contain the motion judge's report framing the legal question or a copy of the defendant's motion to suppress. Because the parties are in substantial agreement as to the relevant legal question and the essential factual predicate, we decide the question in the interest of judicial economy. Cf. *Commonwealth* v. *Colon,* 431 Mass. 188, 193 n.9 (2000).

license, made pursuant to an administrative safety inspection of the defendant's truck, was a warrantless administrative inspection that violated the defendant's rights under the Fourth Amendment to the United States Constitution.[2]

*Background.* The following relevant facts, taken from the criminal docket sheet and the evidence presented at the hearing on the defendant's motion to dismiss, are undisputed. Officer Keith Strange of the Framingham police department is a member of that department's "Truck Team," which is charged with enforcing both Federal and State commercial vehicle regulations. As required for that assignment, Officer Strange has been certified as an inspector by the Federal Motor Carrier Safety Administration (FMCSA), a division of the United States Department of Transportation (DOT).[3] Officer Strange's duties include performing administrative safety inspections of commercial vehicles. Consistent with his training, Officer Strange's selection of a vehicle for inspection does not require him first to observe an infraction. Rather, he identifies and randomly selects a commercial motor vehicle, makes a stop, and conducts an administrative safety inspection.

On March 10, 2009, Officer Strange was in the parking lot of a vacant restaurant performing administrative safety inspections. He observed a large, two-axle dump truck, operated by the defendant, traveling on Concord Street, a public way in Framingham. Believing it to weigh over 10,000 pounds, therefore qualifying it as a commercial vehicle under Federal and State regulations,[4] he signaled the defendant to pull into the parking lot. He then left his police cruiser, approached the driver (later identified as the defendant), and requested that he hand over his license, medical

---

[2]No argument is made that the inspection violated the defendant's rights under art. 14 of the Massachusetts Declaration of Rights.

[3]The certification required, inter alia, completion of a two-week training program provided by the State police, demonstration that two written examinations administered by DOT had been passed, and participation in a field training program that, as testified to by Officer Strange, "included thirty-two Level 1 inspections. . . . A Level 1 inspection is a complete inspection of both the driver and the commercial motor vehicle. We do everything from checking driver credentials, logbook, license, medical certificate and so on. Upon doing that we then start on the commercial motor vehicle. The working mechanisms of the vehicle."

[4]See 49 C.F.R. § 350.105 (2007).

certificate and the registration of the truck. The defendant was unable to provide a valid commercial driver's license and informed the officer it had been revoked. He was charged with operating a motor vehicle on a suspended license in violation of G. L. c. 90, § 23.

The statutory basis of the above described inspection is contained in G. L. c. 90, § 19L(*a*), which provides for the adoption of regulations to ensure compliance by interstate and intrastate motor carriers with State and Federal laws, including "regulations of the United States Department of Transportation, Federal Motor Carrier Safety Administration, contained in Title 49 of the Code of Federal Regulations."[5]

---

[5]Section 19L of chapter 90 of the General Laws, entitled "Regulations to ensure compliance of interstate and intrastate motor carriers with federal and state laws; inspection of records; penalties," provides in relevant part:

"Section 19L. (*a*) The registrar shall adopt regulations to ensure compliance by all interstate and intrastate motor carriers with this chapter and with:

"(1) the regulations of the United States Department of Transportation, Federal Motor Carrier Safety Administration, contained in Title 49 of the Code of Federal Regulations, relative to:

"(i)  proof of financial responsibility;

"(ii)  driver qualification files, including all required forms;

"(iii)  drug and alcohol testing records as applicable;

"(iv)  records of duty status and supporting documents;

"(v)  driver vehicle inspection reports and maintenance records;

"(vi)  hazardous materials records as applicable; and

"(vii) an accident register and copies of all accident reports required by state or other governmental entities or insurers.

"(2) sections 2, 3, 9 and 10 of this chapter, relative to operator licensing and registration of commercial vehicles;

"(3) section 2B of chapter 85, section 31 of this chapter, and any regulation established thereunder relative to transportation of freight, passengers or hazardous materials;

"(4) chapter 90F, relative to the operation of commercial vehicles; and

"(5) any other applicable state statute pertaining to the operation of commercial motor vehicles."

*Discussion.* Under Mass.R.Crim.P. 34, we may, prior to a trial, answer questions of law that are "of importance to the general public, or questions of substantial significance which have not previously been considered by the [United States] Supreme Court or by either of the appellate courts of the Commonwealth." *Commonwealth* v. *Bankert*, 67 Mass. App. Ct. 118, 120 (2006), quoting from Smith, Criminal Practice and Procedure § 2213 (2d ed. 1983).

Here, the defendant claims that police use of random stops, not based on any reasonable suspicion of a violation of an administrative regulation, to effect warrantless administrative safety inspections of commercial vehicles, violates the Fourth Amendment to the United States Constitution. That precise question has not been addressed in our decisional law.

The question is, however, materially controlled by *Commonwealth* v. *Tart*, 408 Mass. 249 (1990), in which the court, applying the three-part analysis of the United States Supreme Court in *New York* v. *Burger*, 482 U.S. 691, 702-703 (1987), upheld the constitutionality of warrantless administrative inspections of commercial fishing vessels.[6]

In *Tart*, the court concluded that (1) the Commonwealth has a "substantial interest" in regulating the fishing industry; (2) the "mobile nature" of fishing vessels and the limited opportunities of the Commonwealth to ensure regulatory compliance rendered "unannounced, even frequent, inspections . . . essential"; and (3) the statute allowing for administrative inspections provides a "constitutionally adequate substitute for a warrant," in that commercial fishermen are on notice both of the permitting requirement and of the statutory basis for inspection, the scope

---

[6]In *New York* v. *Burger*, 482 U.S. 691 (1987), the Court stated that "[b]ecause the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, . . . a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment . . . so long as three criteria are met." *Id.* at 702. These criteria are: (1) "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme' "; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." (Citations omitted.) *Ibid.*

of which is clear and narrowly defined. *Commonwealth* v. *Tart*, *supra* at 254-256.

We think that the analyses in *Tart* and *Burger* apply as well in the context of administrative safety inspections of closely regulated commercial transport vehicles. The Commonwealth's regulation of the trucking industry presents nearly identical challenges to effective regulatory enforcement of the fishing industry discussed in *Tart*, *supra*. The defendant does not contest that the Commonwealth's interest in the regulatory scheme is substantial. Section 19L of G. L. c. 90 seeks to enforce the State and Federal regulations that will ensure safe operation of inter-state and intrastate commercial vehicles on the public ways of the Commonwealth, by inspection of documents that reflect that the operator is properly licensed and able to operate the vehicle safely, by inspection of documents pertaining to the vehicle, and the vehicle itself, to determine that the vehicle is properly main-tained and its cargo is safely carried. The statute furthers the Commonwealth's substantial interest in protecting from harm those who travel on or near its ways. See, e.g. *United States* v. *Maldonado*, 356 F.3d 130, 135 (1st Cir. 2004) ("the interstate trucking industry is regulated extensively by both [F]ederal and [S]tate agencies. Federal regulations alone cover such things as drivers' qualifications, drivers' hours of service, inspection, repair and maintenance of trucks, vehicle parts and accessories, reporting of accidents, recording of itineraries, safe handling of cargo, transportation of hazardous materials, and a myriad of other issues").[7]

The defendant does not contest that warrantless inspections are necessary to further that regulatory scheme. Instead, the defend-ant argues that, unlike in *Tart*, the statute and regulations at issue here fail to provide a constitutionally adequate substitute for a

[7]We note that our conclusion that this industry is closely regulated is in line with every Federal appellate court to have considered the issue. In addition to *United States* v. *Maldonado*, 356 F.3d 130 (1st Cir. 2004), see *United States* v. *Dominguez-Prieto*, 923 F.2d 464, 468 (6th Cir.), cert. denied, 500 U.S. 936 (1991); *United States* v. *Mendoza-Gonzalez*, 363 F.3d 788, 793-794 (8th Cir. 2004); *United States* v. *Castelo*, 415 F.3d 407, 410 (5th Cir. 2005); *United States* v. *Delgado*, 545 F.3d 1195, 1201-02 (9th Cir. 2008), cert. denied, 129 S. Ct. 1383 (2009); *United States* v. *Mitchell*, 518 F.3d 740, 751 (10th Cir. 2008); *United States* v. *Steed*, 548 F.3d 961, 967 n.5 (11th Cir. 2008).

warrant, in that they do not meaningfully limit the time, place, or frequency of inspection.

Under *Tart* and *Burger*, whether a statute or regulation provides an adequate substitute for a warrant turns on whether it satisfactorily performs "the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, 482 U.S. at 703. "[I]n defining how a statute limits the discretion of the inspectors, . . . it must be 'carefully limited in time, place, and scope.' " *Ibid.*, quoting from *United States* v. *Biswell*, 406 U.S. 311, 315 (1972). Accord *Tart, supra* at 256.

In *United States* v. *Maldonado, supra* at 136,[8] the court concluded that the regulations now before us satisfied that standard:

> "The carefully delineated scope of the [F]ederal regulations suitably cabins the discretion of the enforcing officer. Moreover, the regulations themselves give ample notice to interstate truckers that inspections will be made on a regular basis. To cinch matters, commercial drivers are required by law to be familiar with the applicable regulations."

The First Circuit's analysis and conclusions in *United States* v. *Maldonado* are persuasive. Among other things, the applicable regulations limit who may perform inspections (licensed FMCSA agents), which vehicles may be inspected (commercial vehicles), when they may be inspected (vehicles in operation), and what items may be inspected (e.g., license, registration, drug and alcohol testing records, hazardous materials records). See G. L. c. 90, § 19L; 49 C.F.R. § 396.9(a) and (b) (2009). The statutory and regulatory scheme informs any operator of interstate or intrastate motor carriers operating on the public ways of the Commonwealth that he or she may be required to produce a license. The scope of the inspection is narrowly defined and its sole purpose is to ensure that operators have proper documentation and their vehicles are being safely

---

[8]Although *Maldonado* is factually distinct in that the inspection in that case occurred after the vehicle was lawfully stopped for speeding, the focus of the appeal was the warrantless search of the truck pursuant to the administrative search exception to the warrant requirement. *Id.* at 134.

operated. "Therefore, the discretion of the inspector is limited." *Tart*, 408 Mass. at 256.

The defendant additionally argues that, even if constitutionally sound, an administrative safety inspection may not be initiated, as it was in this case, by a random, suspicionless traffic stop. The text of 49 C.F.R. § 396.9(a) specifically provides for inspections by FMCSA-certified officers of "vehicles *in operation* and intermodal equipment *in operation*" (emphasis added). This language authorizes suspicionless stops of commercial vehicles in operation for the sole purpose of performing administrative inspections. See, e.g., *State* v. *Livingston*, 153 N.H. 399, 403 (2006); *State* v. *Hewitt*, 400 N.J. Super. 376, 384-386 (2008); *McCauley* v. *Commonwealth*, 17 Va. App. 150, 152-156 (1993).

Indeed, restrictions of the nature suggested by the defendant would render meaningless the enforcement needs of this particular regulatory scheme. "Trucks operate twenty-four hours a day and the officers must, necessarily, have the authority to conduct these administrative inspections at any time." *United States* v. *Dominguez-Prieto*, 923 F.2d 464, 470 (6th Cir. 1991). Accord *United States* v. *Delgado*, 545 F.3d 1195, 1203 n.7 (9th Cir. 2008), cert. denied, 129 S. Ct. 1383 (2009); *United States* v. *Ruiz*, 569 F.3d 355, 356-357 (8th Cir. 2009).[9]

We also reject the argument that an administrative inspection in the context of a highly regulated industry that is conducted pursuant to the FMCSA regulations is analogous to the arbitrary selection of vehicles at a sobriety checkpoint, which is prohibited. See *Commonwealth* v. *Murphy*, 454 Mass. 318, 323 (2009). In such cases, we are concerned with constitutionally protected privacy concerns of ordinary citizens and not the attenuated expectation of privacy that accompanies pervasive government regulation of an industry. See *Burger*, 482 U.S. at 700; *Tart*, *supra* at 253-254.

---

[9]In his brief, the defendant cites three cases for the contrary proposition, none of which is applicable here. *People* v. *Deacy*, 140 Misc. 2d 232 (N.Y. 1988), involved a State statute that explicitly limited administrative inspections to vehicles that had already been lawfully stopped. *State* v. *Myers*, 63 Ohio App. 3d 765 (1990), did not involve an administrative inspection of a closely regulated industry, and therefore falls outside of the *Burger* exception. Finally, *United States* v. *Shaefer, Michael & Clairton Slag, Inc.*, 637 F.2d 200 (3d Cir. 1980), involved a stop that was pretextual. See note 10, *infra*.

Commonwealth *v.* Leboeuf.

Accordingly, our answer to the reported question is: No. The random stop of a commercial vehicle for the purpose of conducting an administrative safety inspection, pursuant to which the defendant was requested to produce his license, was not unreasonable under the Fourth Amendment to the United States Constitution.[10] The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[10]The defendant expressed concern that, by upholding the constitutionality of suspicionless administrative traffic stops, the door might be opened to pretextual stops that have as their target, for example, illegal immigrants. Nothing in this record provides a basis for the defendant's concerns. Thus, the question we are asked to answer does not implicate any allegation of false pretenses or pretext. We note that "an administrative search may not be used as a subterfuge to avoid the burden of establishing probable cause to support criminal investigative search." *Commonwealth* v. *Bizarria*, 31 Mass. App. Ct. 370, 375 n.7 (1991), citing *Commonwealth* v. *Frodyma*, 386 Mass. 434, 445 (1982).